IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| John Douglas Alexander, #194748,    ) | Civil Action No. 6:16-600-HMH-KFM |
| Petitioner,    ) | |
|    ) | **REPORT OF MAGISTRATE JUDGE** |
| vs.    ) | |
|    ) | |
| Leroy Cartledge, Warden,    ) | |
|    ) | |
| Respondent.    ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently incarcerated at McCormick Correctional Institution in the South Carolina Department of Corrections (doc. 1). The petitioner was indicted by the Spartanburg County Grand Jury in November 2006 for assault and battery with intent to kill ("ABWIK") and possession of a firearm during the commission of violent crime (app. 473–74).[1]

Thomas A. M. Boggs represented the petitioner on the charges. The petitioner's jury trial before the Honorable J. Derham Cole began on June 13, 2007. Jennifer A. J. Jordan and Robert Coler represented the State during the two-day trial (app. 1). The petitioner was found guilty on both charges (app. 165). Judge Cole sentenced the

---

[1]The Appendix can be found at Docket Entry Number 11-1. The respondent explained that trial transcript page numbers 59 through 76 were missing and were inserted and numbered 58A through 58R, and that the order of dismissal was missing pages that are attached as pages 471A through 471C in the Appendix.

petitioner to life imprisonment on the ABWIK conviction and to five years on the weapon conviction (app.169).

***Direct Appeal***

The petitioner filed a notice of appeal (doc. 1-2). On December 8, 2008, appellate counsel filed a final brief of appellant in the South Carolina Court of Appeals and raised the following issues:

> Did the trial court err in failing to issue a charge on the law of self-defense where such a charge was supported by the evidence and material to a fair presentation of the case?

> Did the trial court err in issuing a charge on the law which included an instruction on presumptions which lessened and shifted the prosecution's burden of proof?

(App. 174). In an unpublished opinion filed April 29, 2010, the South Carolina Court of Appeals affirmed the petitioner's conviction finding that an issue conceded at trial cannot be argued on appeal, affirming constitutional arguments are not exceptions to the error preservation rule, and holding an issue is not preserved for review if it was not raised and ruled upon by the trial court (app. 212–13). The petitioner did not seek a rehearing or certiorari to the Supreme Court of South Carolina, and the Court of Appeals issued the remittitur on May 17, 2010 (app. 214).

***PCR***

On May 6, 2010, the petitioner filed an application for post-conviction relief ("PCR"), in which he raised the following claims:

> 1. Ineffective assistance of trial counsel, in that:

>> a. Petitioner was denied his non-waivable Constitutional right to be present at a "critical state" of his criminal trial (Applicant's Grounds A, B);

>> b. Counsel conceded at trial that the evidence did not support a charge on self-defense (Applicant's Ground D);

2

c. Counsel failed to present a meaningful or effective defense at trial (Applicant's Ground I);

d. Counsel failed to adequately investigate, prepare for and advise Petitioner of a possible defense based on insanity(Applicant's Grounds H, K);

e. Petitioner was denied right to peremptory challenge and strike a juror who after being selected, sworn in and the trial started, was discovered to have been associated with the judge (Applicant's Ground M);

f. Counsel failed to object to or request a mistrial when the phrase "malice and malice aforethought" was used forty-two times during closing arguments and the jury charge (Applicant's Ground G);

g. Counsel failed to object to the jury instructions (Applicant's Grounds P, S);

2. Trial judge's abuse of discretion, in that:

a. Trial judge conspired along with the Solicitor to commit prosecutorial abuse by allowing the term "malice and malice aforethought" forty-two times during the closing argument and jury charge (Applicant's Ground N);

b. Jury instruction constituted prejudicial error (Applicant's Ground P);

3. Violation of due process, in that:

a. Petitioner's Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated (Applicant's Ground E, F); and

4. Prosecutorial misconduct, in that:

a. Prosecutor gave false impression to Court and jury which involved a corruption of the truth seeking function of the trial process (Applicant's Ground J); and

b. Brady violation (Applicant's Grounds C, O).

3

(App. 215–45).  The State interpreted the petitioner's claims of due process violations as allegations of ineffective assistance of counsel (app. 325).  On October 18, 2010, the State filed its return addressing the petitioner's claims (app. 324–27).

On December 8, 2011, the Honorable J. Mark Hayes, II, convened an evidentiary hearing.  The petitioner was represented by John Holland (app. 329).  At the beginning of the hearing, PCR counsel informed the court that trial counsel had moved for and been granted discovery of the grand jury impanelment documents and any information used in the petitioner's indictment (app. 332–33, 432).  PCR counsel stated he only received two documents related to the petitioner's grand jury indictment, and he asked the court's permission to file a subsequent PCR should any grand jury documentation come to light (app. 333).  The State opposed the request on the grounds that the petitioner was entitled to one PCR action, but also acknowledged that the petitioner could proceed with a successive application if he met the requirements of the newly discovered evidence standard (app. 334).  The petitioner and trial counsel testified at the PCR evidentiary hearing (app. at 335–427).  At the conclusion of the hearing, the PCR court took the matter under advisement (app. 430).  On March 26, 2012, Judge Hayes issued an order denying relief and dismissing the application (app. 463–72).

On April 11, 2012, the petitioner filed a *pro se* motion to alter or amend the judgment of the order of dismissal of March 26, 2012 ("Rule 59(e) motion") (doc. 11-3).  On April 27, 2012, the petitioner filed an amendment to his Rule 59(e) motion (doc. 11-4). On April 26, 2012, the State moved to dismiss the Rule 59(e) motion on the grounds South Carolina does not recognize hybrid representation, and the petitioner was at that time represented by PCR counsel Holland (doc. 11-5).  The petitioner's Rule 59(e) motion was denied on May 3, 2012 (doc. 11-6).

4

**PCR Appeal**

On September 4, 2012, the petitioner's PCR appellate counsel, Robert M. Pachak, filed a *Johnson*[2] petition for writ of certiorari in the Supreme Court of South Carolina raising the following issue:

> Whether defense counsel was ineffective in failing to object to a jury charge instructing that malice may be inferred from the use of a deadly weapon where evidence was presented that the lesser included offense of assault and battery of a high and aggravated nature may have been committed?

(Doc. 11-7 at 2). PCR appellate counsel also submitted a petition to be relieved as counsel (doc. 11-7 at 7). On October 18, 2012, the petitioner filed a *pro se* petition for writ of certiorari, which the court treated as a *pro se* response to the *Johnson* petition (doc. 11-8). In his *pro se* writ of certiorari, the petitioner raised the following grounds:

> 1. Did the PCR Court err in finding that trial counsel was not ineffective for failing to object to the trial judge's four denials for requests for a charge on the law of self-defense where such a charge was supported by facts and evidence and was material to a fair presentation of the case?
>
> 2. Did the PCR Court err in finding that trial counsel was not ineffective for conceding with the trial judge that there was insufficient evidence for a foundation laid to support a self-defense charge which entirely failed to subject the prosecution's case to an adversarial testing pursuant to United States v. Chronic?
>
> 3. Did the PCR Court err in finding that trial counsel was not ineffective for failing to inform or explain to the Appellant the true nature and elements of the crimes (Assault and battery with intent to kill and assault and battery of a high and aggravated nature) which he was being held to answer for, or the elements of self-defense or defense of another?
>
> 4. Did the PCR Court err in finding that trial counsel was not ineffective for negotiating with the trial judge at the beginning of the criminal proceeding, outside the presence of Appellant,

---

[2]A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief; a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim. *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

during and in chambers meeting, not to present or argue a meaningful self-defense case on the Appellant's behalf?

5. Did the PCR Court err in finding that trial counsel was not ineffective for failing to explain to the Appellant the practical implications its obligations and benefits of testifying on his own behalf following the trial judge's denial of all requests for a self-defense charge, and thereafter affording trial counsel an opportunity to enlighten the Appellant of the detriment it had on the trial counsel in adequate self-defense trial strategy?

6. Did the PCR Court err in finding that trial counsel was not ineffective for failing to object to the exclusion and absenting Appellant from a very critical stage of his criminal proceeding i.e., during the beginning of the trial in and in Chambers meeting where the trial judge decided they would be no self-defense charge given at the conclusion of the State's case and Appellant's defense, in addition to the trial counsel's placing the trial judge on Notice that no profound effort would be executed to obtain a self-defense charge?

7. Did the PCR court err in finding that trial counsel was not ineffective for failing to request a State v. Fennell Jury Charge of presence of malice does not preclude a finding on Assault and battery of a high and aggravated nature?

8. Did the PCR Court err in finding that trial counsel was not ineffective for failing to object to the prosecution, during Closing Arguments, proclaiming to the jury, "South Carolina does not consider assault and battery of high and aggravated nature as a crime of violence;" contrary to Statute Section 16-3-620 S.C. Code Ann. (1976)?

9. Did the PCR Court error in finding that trial counsel was not ineffective for failing to object to the prosecution's voluntarily and knowingly giving a false impression to the trial judge and jury by using perjured statement that involve a corruption of the truth seeking process of the criminal trial proceeding?

10. Did the PCR Court err in finding that trial counsel was not ineffective for failing to object to the prosecution's three (3) false, misleading and deceitful statements to the trial judge and jury during Closing Arguments that Mr. Freeman sustained life-threatening injuries to his stomach but rather all medical, surgical and examination reports, along with all trial evidence, facts and testimony demonstrating that Mr. Freeman (victim) received non-life-threatening injuries to the pelvis?

6

11. Did the PCR Court err in finding that trial counsel was not ineffective for failing to pursue a <u>Brady</u> violation where the prosecution failed to disclose and unlawfully suppressed a 911 Emergency Tape. Or in the alternative, where trial counsel failed to obtain utilize or even present as mitigating evidence the 911 Emergency Tape?

12. Did the PCR Court err in finding that trial counsel was not ineffective for failing to pursue a Missouri v. Seibert violation where the investigating detectives executed unconstitutional Federal and State police tactics of inserting Miranda warning in the midst of coordinating and continuing interrogations that was designed to mislead and deprived Appellant of truthful knowledge essential to the ability to understand the nature of his right to remain silent or the consequences of abandoning them?

13. Did the PCR Court care in finding that trial counsel was not ineffective for failing to object or request a curative instruction on the trial judge's partial, bias and highly prejudicial General Intent to Charge which created a Federal and State unconstitutional shifting the burden of proof upon the Appellant on the element of intent?

14. Did the PCR Court err in finding that trial counsel was not ineffective for failing to object where the prosecution failed in accordance with Statute Section 17-25-45 S.C. Code Ann. (1976) to serve the Appellant with a timely Notice to Seek Life Without Parole at least ten days prior to his criminal trial?

15. Did the PCR Court err in finding that trial counsel was not ineffective for failing to discover, utilize, or present to the trial court and jury critical exculpatory material evidence i.e., a Voluntary Statement of Appellant's defense witness, that profoundly supports and establishes the elements of self-defense?

16. Did the PCR Court err in finding that trial counsel was not ineffective for failing to object to the prosecution's invading on the province of the jury by opining on an ultimate issue i.e., malice and criminal intent, of the law which infected the trial with unfairness by arousing the passion and prejudice of the jurors to wit, injecting an arbitrary factor into the jury's deliberations and being bent on misleading, deceiving and seducing the jury to reach an improper and wrongful verdict by unlawfully alluding to an unrelated and irrelevant guilty defendant who committed a separate statutory offense of

7

armed robbery. And thereafter pleading with the jury to use such illustrations as an rationale in the instant case?

17. Did the PCR Court err in finding that trial counsel was not ineffective for failing to object to the trial judge is repeatedly injecting his personal opinion i.e., (1) "I can only assume that you (prosecutor) intend to address that in your closing argument, that I'll (the trial judge) will not be instructing them (the jury) on self-defense. They cannot consider that or legal justification. And so I assume you'll be able to handle that through some persuasive closing argument." (2) "So that's why I'm (the trial judge) saying, if I were the prosecutor I did argue that this is not a self-defense case. And I won't be instructing them on the law of self-defense. And there is nothing wrong in my view. I'm talking about that's argument." Into Appellant's criminal trial?

18. Did the PCR Court err in finding that trial counsel was not ineffective for failing to object to the trial judge answering the jury's question on the law of malice through the bailiff, off the record and without counsel nor Appellant present to hear the supplemental Malice Charge?

19. Did the PCR Court err in finding that trial counsel was not ineffective for failing to object to the trial judge is highly prejudicial, improper and bias coercive Jury Charge of; "all 12 of you jurors must be in agreement before any decisions may be returned?

20. Did the PCR Court err in finding that trial counsel was not ineffective for failing to object to the trial judge's unconstitutional Malice Charge of; malice may be inferred from the use of a deadly weapon? See State v. Moose, 313 S.E.2d 507 (1984)

21. Did the PCR Court err in finding that trial counsel was not ineffective for failing to object to or seek to quash the indictment, prior to the criminal trial, where it did not notify Appellant concisely of any of the Twenty-Six (26) inferences, opinions door act or acts of malice the trial Judge charge to the Jury. Nor of any of the Sixteen (16) opinions, inferences or act or acts of malice that the prosecution advised the jury that they could consider?

22. Did the PCR Court err in finding that trial counsel was not ineffective for failing to move for the Court for Court appointed psychiatrist examination and expert witness to assist in preparation, utilization and presentation of the evidence

> demonstrating that, at the time of the incident, Appellant's Twenty-Seven (27) years of mental health inpatient – out patient mental health treatments and defects yields mitigating evidence which relates directly to the elements of malice and criminal intent of the crime Assault and battery with intent to kill as well as Assault and battery of a high and aggravated nature?

(Doc. 11-8 at 2–10 (errors in original)).

On March 7, 2013, the petitioner filed a motion seeking to relieve petitioner's counsel and appoint new counsel (doc. 11-9). The State made its return on March 22, 2013 (doc. 11-10). On April 3, 2013, the Supreme Court of South Carolina denied the petitioner's motion (doc. 11-11).

On or about July 30, 2013, the petitioner's case was transferred to the South Carolina Court of Appeals, pursuant to Rule 243(1), S.C.A.R. (doc. 11-12). On May 21, 2015, the Court of Appeals issued an order denying the petition and granting PCR appellate counsel's motion to withdraw (doc. 11-13). On June 4, 2015, the petitioner filed a petition for rehearing in the Court of Appeals (doc. 11-14). The Court of Appeals issued its remittitur on the PCR Appeal on June 8, 2015 (doc. 11-15). On June 12, 2015, the petitioner filed a motion to rescind the remittitur of June 8, 2015 (doc. 11-16). The Court of Appeals issued an order recalling the remittitur on June 25, 2015 (doc. 11-17). Accordingly, on July 6, 2015, the State filed its return to the petition for rehearing (doc. 11-18). The petitioner filed his reply on July 10, 2015 (doc.11-19). On August 20, 2015, the Court of Appeals denied the petitioner's petition for rehearing (doc. 11-20). On September 21, 2015, the Supreme Court of South Carolina dismissed the petitioner's petition for writ of certiorari (doc. 11-21). On October 19, 2015, the Court of Appeals issued the remittitur (docs. 11-2, 11-23).

## FEDERAL PETITION

On February 22, 2016, the petitioner filed his Section 2254 petition (doc. 1). On April 25, 2016, the respondent filed a motion for summary judgment (doc. 12) and a return and memorandum (doc. 11). By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion (doc. 13). On June 13, 2016, after being granted one extension of time, the petitioner filed his response in opposition to the motion for summary judgment (doc. 25). The respondent filed a reply on June 23, 2016 (doc. 27). The petitioner filed an additional attachment to his response in opposition on June 30, 2016 (doc. 30).

Also on April 25, 2016, the petitioner filed a motion for default judgment and a motion for summary judgment alleging that he is entitled to relief as a matter of law (docs. 15, 16). The respondent filed a response in opposition to the motions for default judgment and summary judgment on May 12, 2016 (doc. 17). The petitioner filed a reply on May 23, 2016, and filed a supplement to the motions on July 18, 2016 (docs. 24, 35).

In his federal habeas corpus petition, the petitioner makes the following claims:

> **Ground One:** That by way in through ineffective assistance of counsel the Petitioner was denied and deprived of due process and equal protection of law under the Fifth (5th), Sixth (6th) and Fourteenth (14th) Amendments of the United States Constitution. As well as Article 1 Section 3 of the South Carolina Constitution.
>
> *Supporting Facts:* The Petitioner contends that during his jury trial he presented abounding evidence and facts of self-defense and made four (4) separate and distinct requests for a charge on the law of self-defense. The State made no objection to either request. However, in response to each individual request for a charge on the law of self-defense made by the Petitioner, the trial judge would evaluate the weight and value of the facts in evidence and conclude that "there was insufficient" or "there was not enough evidence to prove self-defense." Consequently,

10

the trial judge denied each request. During the Petitioner's Post Conviction Relief hearing trial counsel agreed to the Petitioner's assertion that he was grossly prejudiced in connection with this ground. Trial counsel also stated for the record: "Out of the 'abundance of the evidence, I should have objected'" where such charge (self-defense) was supported by facts in evidence and material to a fair presentation of the case

**Ground Two:** That the Petitioner was denied and deprived of due process and equal protection of the law under the Fifth (5th), Sixth (6th) and Fourteenth (14th) Amendments of the United States Constitution. As well as Article 1 Section 3 of the South Carolina Constitution by and through ineffective assistance of counsel.

*Supporting Facts*: During the Petitioner's jury trial, trial counsel completely abandon the adversarial process in violation of the Supreme Court's ruling in United States v. Cronic, 466 U.S. at 658, 104 S.Ct. at 2046. Concisely, after the trial judge denied and deprived the petitioner of a charge on the law of self-defense the fourth (4th) time (without trial counsel objecting) trial counsel conceded along with the trial judge that "the was not enough evidence to prove self-defense." Rather than presenting available additional evidence (such as the Petitioner's testimony) to support the self-defense case, objecting or, argue that the evidence only supported a conviction on the lesser included offense defense; trial counsel instead intelligently voluntarily resigned any pursuit of an adversarial process protected by the 6 amendment requirement that the petitioner have "counsel acting in the role of an advocate." Anders v. California, 386 U.S. 738, 743 (87 S. CT. 1396, 1399, 18L.Ed. 2d 493 (1967). As such, Petitioner presumed prejudice where trial counsel allowed the burden to be shifted where the prosecution's case was not required to survive the crucible of any meaningful adversarial testing.

**Ground Three:** That the Petitioner was denied and deprived of due process and equal protection of the law under the Fifth (5th), Sixth (6th) and Fourteenth (14th) Amendments of the United States Constitution. As well as Article 1 Section 3 of the South Carolina Constitution. By and through ineffective assistance of counsel under Appellate Court Rule 407 Professional Conduct Rule 1.4 Communication Section(a)(2)(3) and (b) Communicating With Client Section [3] and [5].

*Supporting Facts*: The Petitioner contends that trial counsel never afforded or provided him with the most universally recognized of Due Process and Equal Protection of Law: (1)

That the Petitioner be advised and informed of real Notice of the True Nature and Elements of self-defense, Petitioner's sole defense; (2) That the Petitioner be up prized and enlightened of real Notice of the True Nature and Elements of Assault and battery with intent to kill, the charges against him; and (3) That the Petitioner be notified in placed on Notice of the True Nature and Elements of Assault and battery of a high and aggravated nature of which the trial Jury was charged.

During the Petitioner's Post Conviction Relief hearing, trial counsel stated: "I can't sit here and say on such and such a date. And I don't know that I would have sat down and given him a legal definition. I try to do it in layman's terms. I don't – – I don't use legal definitions all that much." As such, it was literally impossible for the Petitioner to discern that while trial counsel presented overwhelming evidence of self-defense during trial; simultaneously he erroneously and incorrectly pursued an defense of another defense. Also using trial counsel's layman's rationale, it was impossible for Petitioner to perceive that his testimony was positively imperative to support and secure a charge on the law of self-defense. And that the Petitioner's testimony was absolutely necessary to successfully rebut and refute the elements of criminal intent, malice and malice aforethought.

**Ground Four:** The petitioner contends that he was denied and deprived of Due Process and Equal Protection of Law as a result of trial counsel failing to afford or provide him the effective assistance of counsel guaranteed by the Sixth (6th) and Fourteenth (14th) Amendments of the United States Constitution and South Carolina Constitution Article 1 Section 3.

*Supporting Facts*: The trial transcript show and prove that, along with the trial Judge and solicitor, trial counsel participated in a secret in-chambers meeting during the beginning of the Petitioner's Jury trial. That in their secret meeting, Judge Cole predetermined that, at the conclusion of the trial, he was not going to issue the Jury instruction on self-defense. Additionally, during the in chambers meeting; trial counsel informed the solicitor and Judge Cole that he would not prepare nor present a self-defense case on the Petitioner's behalf.

However, only after all the evidence had been submitted, trial counsel closed the defense, and the State rested its case did the Petitioner gained any knowledge of Judge Cole's pre--- Opening Statements decision on a Jury Charge which would not include self-defense. Or, of trial counsel's premeditated and

calculated intent not to prepare, perfect nor present a self-defense case on Petitioner's behalf.

Here, the prejudice is immediately obvious. Petitioner presumed prejudice where the solicitor, trial counsel and judge Cole deliberately ignored the Petitioner of any of the contents discussed in their in-chambers meeting until such time that his conviction was absolute and imminent.

Specifically, in addition to the above-mentioned rulings, agreements or arrangement reached by trial counsel, the solicitor and judge Cole; trial counsel's intention to present evidence of self-defense but pursue a frivolous case of defense of another. While relevant, clearly the circumstances, facts and evidence of the case do not support the elements of defense of another but rather, self-defense.

**Ground Five:** That the Petitioner was denied and deprived of Due Process and Equal Protection of Law under the Fifth (5th), Sixth (6th) and Fourteenth (14th) Amendments of the United States Constitution, South Carolina Constitution Article 1 Section 3 and South Carolina Code Ann. (1976) Statute Section 19-11-50. By and through ineffective assistance of counsel.

*Supporting Facts*: The Petitioner contends that pursuant to Rule 407 Rules of Professional Conduct, Preamble: A Lawyer's Responsibilities [2], trial counsel failed to perform the function to provide the Petitioner with adequate or sufficient knowledge of his right to reasonably or intelligently resolve whether or not to testify during his jury trial. Significantly prior to Petitioner's trial, trial counsel advised the Petitioner that he would not be putting him on the stand. Particularly, because the solicitor would use the prior conviction of voluntary manslaughter against Petitioner if he chose to testify. The Petitioner interpreted trial counsel's legal advise to mean that if he decided to testify; the solicitor would ask him prejudicial details about his prior conviction with the sole intent to produce bias and partiality in the minds of the jurors as to him been guilty of the correct charge.

Incidentally, once all the evidence was submitted to the jurors, trial counsel and his defense*and, the State rested its case Judge Cole informed trial counsel (for the fourth and final time) that he was not going to grant the Petitioner's request for a charge on the law of self-defense. And stated to trial counsel: "if that changes your trial strategy or, if that changes the defendant's mind about whether or not he will testify; 'I want to

give you the opportunity to discuss that with him.'" However, instead of taking advantage of that opportunity to explain to the Petitioner that he no longer had anything to lose but rather everything to gain if he took the stand and produced additional evidence of self-defense; on the contrary, trial counsel completely abandoned the pursuit of defense of another or self-defense defense and made a request for a charge on the law of assault and battery of a high and aggravated nature. "A defendant cannot knowingly and intelligently waive what he does not know." Hoffman, 903 F. 2nd at 289

*Twice while trial counsel was presenting the Petitioner's defense, Judge Cole emphasized to Petitioner: "now is the only time you will have to testify and produce evidence." "So if you want to testify you have to do so now during the only opportunity that you have.

**Ground Six:**  The Petitioner asserts that he was denied and deprived of Due Process and Equal Protection of Law under the Fifth (5th), Sixth (6th) and Fourteenth (14th) Amendments of the United States Constitution and Article 1 Section 3 South Carolina Constitution. Through and by way of ineffective assistance of counsel where trial counsel failed to object and allow Petitioner's guaranteed right to Federal Rules of Criminal Procedure Rule 43, 18 U.S.C.A. to be denied and deprived.

*Supporting Facts*: The Petitioner contends that during his jury trial, immediately after the jury was sworn, Solicitor Jordan, Solicitor Coler, Judge Cole, and trial counsel dissipated in a secret in-chambers meeting. Following the secret discussions, the Opening Statements began without trial counsel explaining to the petitioner any of the contents of the in chambers meeting.

Consequently, it was only after all the evidence had been submitted to the jurors, trial counsel ended the Petitioner's defense, and the State rested its case that the Petitioner became aware by Judge Cole and trial counsel of the below mentioned in chambers Ruling and agreement:

> (1) Judge Cole emphatically stressed to trial counsel in both solicitors that "he was not going to issue a self-defense charge" in the Petitioner's trial; and

> (2) Trial counsel notified both solicitors and Judge Cole that he would not pursue a self-defense defense because Judge Cole had concluded that the jurors was "not going to be able to consider self-defense or legal justification."

As such, Petitioner presumed prejudice where trial counsel failed to object and deliberately absenced Petitioner, without his consent, from the in chambers meeting where unfavorable

14

Rulings on his defense and evidence were made, and where Petitioner could have heard the reasoning for any unfavorable conclusions of law. Prejudice is also presumed were trial counsel intentionally declined to inform the Petitioner of any of the contents discussed during the secret in chambers meeting. Specifically, that trial counsel fore-knew that Judge Cole was against granting a request on the law of self-defense. And that trial counsel was going to deviate from the defense (self-defense) he had been paid and agree to pursue on the Petitioner's behalf.

**Ground Seven:**  That the Petitioner was deprived and denied Due Process and Equal Protection of Law behind trial counsel failed to provide him the effective assistance of counsel guaranteed by the Sixth (6th) and Fourteenth (14th) Amendments of the United States Constitution and Article 1 Section 3 South Carolina Constitution.

*Supporting Facts*: During the Petitioner's jury trial, Solicitor Jordan gave the jurors sixteen (16) definitions of malice during her Closing Arguments to consider; not less than two which were unconstitutional in South Carolina. Also, Solicitor Jordan erroneously and incorrectly told the jurors "In our state we qualify ABWIK as a crime of violence" "The lesser included offence (ABHAN) is not considered a crime of violence.*" Immediately following Solicitor Jordan's Closing Arguments, the trial court charged the jurors with Twenty-Six (26) inferences of malice (totaling 42). At the Petitioner's Post Conviction Relief hearing, trial counsel admitted (for the record) that "most of the trial court's inferences of malice were prejudicial to the Petitioner, and that one was unconstitutional. See State v. Frazier, 736 S. S.E.2d 301 (S.C. App., 2013); State v. Belcher, 685 S.E.2d 802 (S.C. 2009); and State v. Miller, 725 S.E.2d 724 (S.C. App., 2012). See also State v. Brayboy, 691 S.E.2d 482 (S.C. App., 2010). The South Carolina Supreme Court never disputed the Petitioner's assertion that there is no overwhelming evidence of "malice or intent to kill."

Likewise, the record is clear that, the only inference of malice the jurors could have reasonably considered was the use of a deadly weapon (which the Petitioner admitted that he used in self-defense). In South Carolina ABHAN is the unlawful act of violent injury to another person accompanied by circumstance of aggravation. In circumstances of aggravation includes the use of a deadly weapon; which can give rise to an inference malice. Pursuant to State v. Fennell, 531 S.E. 2d 512 (2000) "A person who, 'acting with malice, unleashes a deadly force in an attempt to kill.'"

In sum, ABHAN could not legally have been charged during the Petitioner's Jury trial unless the trial court determined that Petitioner "lacked the requisite intent to kill." Therefore, Judge Cole made the presence or absence of malice the distinguishing element between ABHAN and ABWIK. In particular, where Solicitor Jordan and Judge Cole's inferences

of malice given to the jurors totaled forty-two (42). To the extent Solicitor Jordan's Closing arguments as well as the trial court's Jury Instructions equated ABHAN with ABWIK, the Malice Charge precluded the jury from a finding of ABHAN if the jury found the Petitioner acted with malice. Untrained in the law, and not advised by Judge Cole, it was literally impossible for the jurors to know or understand that they had a right to find the Petitioner guilty of ABHAN whether malice was present or not.

As such, trial counsel rendered deficient assistance of counsel within the meaning of the Six (6th) and Fourteenth (14th) Amendments where he failed to object to the trial court's unconstitutional malice charge which unlawfully forced the Petitioner's finding of guilt or innocence between ABHAN or ABWIK to be premised on the presence or absence of malice.

*ABHAN "is a crime of violence" in South Carolina. See U.S. v. Johnson, 2011 WL 322364; U.S. v. Hampton, 2012 WL 3686085 (2012); and Bethea, 603 F.3d at 256 (2010).

**Ground Eight:**  That the Petitioner was denied and deprived of Due Process and Equal Protection of Law pursuant to the Fifth (5th), Sixth (6th) and Fourteenth (14th) Amendments of the United States Constitution and Article 1 Section 3 South Carolina Constitution. By way and through trial counsel's deficient assistance of counsel of failing to object to Solicitor Jordan's deliberate and intentional misconstruing as well as distorting the elements of Assault and battery of a high and aggravated nature during her Closing Arguments.

*Supporting Facts*:  During the Petitioner's jury trial, Solicitor Jordan proclaimed to the jurors during her Closing Arguments: "In our State, the charge of assault and battery with intent to kill is considered a crime of violence. The lesser included offense assault and battery of a high and aggravated nature 'is not considered a crime of violence.'"

As an Officer of the Court and, trained in the law, Solicitor Jordan did not simply make a misstatement on the law. But rather, she consciously set out to deceive and mislead the trial jurors on the element and nature of ABHAN. With the sole intent to denied and deprived them of a finding of ABHAN. Thus, because Solicitor Jordan was allowed to unconstitutionally shift the burden of proof upon the Petitioner to prove elements not mentioned are required for ABHAN without any objection, trial counsel was ineffective within the meaning of the Sixth Amendment of the United States Constitution where he allowed a burden of proof above that required by the Due Process Clause to be placed on the Petitioner. See US v. Hampton, 2012 W L 3686085 (2012); U.S. v. Johnson, 2011 WL 322364 (2011); and US v. Bethea, 603 F3rd at 254 (2010).

16

**Ground Nine:** That the petitioner was denied and deprived of due process and equal protection of the law under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article One Section Three South Carolina. As a result of Solicitor Jordan given a false impression to the court and jury, which gave a corruption of the truth seeking function of the trial process. As such, pursuant to statute section 17-247-20 S.C. Code of Law (1976) there exists evidence of material facts not previously presented or heard which requires vacation of the conviction or sentence in the interest of justice.

*Supporting Facts*: The Petitioner contends that his conviction and sentence resulted from the use of known perjured testimony used by the prosecution. And but for counsel's failure to object and successfully refute the perjured testimony with readily available exculpatory evidence included in the discovery materials, the outcome of the Petitioner's trial would have been different.

**Ground Ten:** That through and by way of ineffective assistance of counsel the petitioner was denied and deprived of due process and equal protection of law under the Fifth, Sixth and Fourteenth Amendments as well as Article One Section Three of the South Carolina Constitution where trial counsel failed to object to Solicitor Jordan's Closing Argument stating Three (3) false, misleading and deceitful statements to the trial judge and jury that, "Mr. Freeman sustained life-threatening injuries to the stomach." On the contrary, all facts, medical, surgical and examination Reports in testimony precisely and clearly demonstrates that Mr. Freeman's injuries were to the pelvis. And non-life-threatening.

*Supporting Facts*: The Petitioner contends that during his post conviction relief hearing, trial counsel did not dispute the allegation that he failed to properly research, prepare and to utilize Mr. Freeman's Medical, Surgical and Examination Reports which undisputably establishes that Mr. Freeman sustained an injury to the pelvis bone; not the stomach, as the prosecution stated to the jury three times during Closing Arguments. Moreover, each of the Reports signed by a doctor unequivocally states that the injury was non-life-threatening, unsupportive of an assault and battery with an intent to kill.

**Ground Eleven:** That the Petitioner was denied and deprived of due process and equal protection of law under the Fifth, Sixth and Fourteenth Amendments as well as Article One Section Three of the South Carolina Const. By way and through ineffective assistance of counsel where trial counsel failed to object to Solicitor Jordan willfully violated Federal Rules of Criminal Procedure Rule 16(a)(1); and Brady v. Maryland, 473 US 83, 87 (1963) to withhold material, exculpatory and/or mitigating evidence from the Petitioner.

17

*Supporting Facts*: Petitioner contends that during his post-conviction relief hearing trial counsel did not dispute the allegation that he failed to petition the Circuit Court by way of a Brady Motion for an order compelling the State to produce a true copy of the 911 Emergency Dispatch audio recording to the Petitioner. Consequently, the Petitioner was put to trial without the benefit of critical mitigating and/or exculpatory evidence. On the other hand, the prosecution was allowed, without obstruction, to make seven inaccurate and false references to the 911 Taped Recording which did not truthfully depict the Petitioner State of mind and colloquy with the 911 Emergency Dispatch in begging for speedy assistance for Mr. Freeman.

**Ground Twelve:** That the Petitioner was denied and deprive of due process and equal protection of law under the Sixth and Fourteenth Amendments and Article One Section Three of the South Carolina Constitution. Through and by way of ineffective assistance of counsel where trial counsel particularly behind trial counsel failed to pursue a <u>Missouri v. Seibert</u>, 542 U.S. 600, 124S.Ct. 2601 (2004) violation committed by the State.

*Supporting Facts*: The Petitioner contends that trial counsel failed to pursue a <u>Missouri v. Seibert</u>, supra violation where the investigating detectives employed in unconstitutional police tactics of inserting Miranda warning in the midst of coordinating and continuing interrogation that was designed to mislead and deprived the Petitioner of knowledge essential to his ability to understand the true nature of his right to remain silent or the consequences of abandoning it.

**Ground Thirteen:** That the Petitioner was denied and deprive of due process and equal protection of law under the Fifth, Sixth and Fourteenth Amendments and Article One Section Three S. C. Const. Behind trial counsel's failure to object to the trial court's partial bias and prejudicial General Intent To Kill Jury Charge.

*Supporting Facts*: The Petitioner contends that trial counsel was ineffective for failing to object to the trial court issuing the Jury a bias, erroneous and prejudicial General Intent To Kill Construction which was unreasonable and unconstitutionally shifted the burden of proof of intent upon the Petitioner to prove that he intentionally injured Mr. Freeman in self-defense, lawfully or in a high and aggravated nature as opposed to with an intent to kill. Second, the General Intent To Kill jury Charge was unconstitutional where the Petitioner was never put on Notice (prior to trial) that he would be required to defend

18

against that additional element. Nor did the Petitioner be given an opportunity to present evidence in opposition to the general intent element prior to the trial court instructed it to the jury.

**Ground Fourteen:** That the Petitioner was denied and deprive of due process and equal protection of law under the Sixth Amendment of the United States Constitution behind trial counsel's failed to object to the trial court's sentencing the Petitioner to Life Without Parole where the State failed under Statute Section 17-25-45 (H) S.C. Code of Law (1976) to comply with Section 7. Timely notice.

*Supporting Facts*: The Petitioner contends that the prosecution failed to adhere to the mandatory and specific statutory requirements under Statute Section 17-25-25 (H) Notice S.C. Code Ann. (1976), to timely place the Petitioner on Notice of the State's intention to seek life without parole. As a result of the merits of the Petitioner's defense at trial were affected.

**Ground Fifteen:** That the Petitioner was denied and deprived of due process and equal protection of law under the Sixth Amendment of the United States Constitution behind trial counsel's failed to discover, utilize and present to the trial Court and Jury critical exculpatory material evidence i.e., a Voluntary Statement made by the Petitioner's defense witness which profoundly supports and establishes the elements and jury charge of self-defense.

*Supporting Facts*: The Petitioner contends that after being tried and convicted trial counsel sent him a case file which included a Voluntary Statement and Search Warrant Affidavit given and signed by the Petitioner's defense witness the night of the incident. Both documents contain credible evidence that supports and substantiates the Petitioners self-defense case. Likewise, the Voluntary Statement and Affidavit embody exculpatory and mitigating evidence not presented to the trial jurors or court.

**Ground Sixteen:** That the Petitioner was denied and deprived of due process and equal protection of law under the Sixth (6th) and Fourteenth (14th) Amendments of the United States Constitution as well as Article One (1) Section Three (3) of the South Carolina Constitution. Through and by way of ineffective assistance of counsel. Particularly, where trial counsel failed to object when the prosecution injected an arbitrary factor into the Juror's deliberation process and on misleading, deceiving and seducing the Jury to reach an wrongful verdict.

*Supporting Facts*: The Petitioner contends that trial counsel failed to object when the prosecution made bias, prejudicial and malicious comments during Closing Arguments bent on igniting and arousing the passion and prejudice of the Jurors particularly, the prosecution unconstitutionally injected into the Petitioner's trial and unrelated and irrelevant scenario of a guilty criminal defendant who commits a separate statutory crime of armed robbery and thereafter, advise the Jurors to reach a wrongful and improper verdict by drawing undue inferences or conclusions of guilt in the present case,

**Ground Seventeen:** That the Petitioner was denied and deprived of due process and equal protection of law under the Fifth (5th), Sixth (6th); and Fourteenth (14th) Amendments as well as Article One (1) Section Three (3) and Article Five (5) Section (17) S. C. Const. Through and by way of ineffective assistance of counsel. Particularly, trial counsel failed to object where the trial court exercised no restraint, caution or circumspection to the requirement of neutrality or in making remarks and comments on the force, effect, weight and sufficiency of evidence, credibility of witness and guilt of the Petitioner as to the controverted facts.

*Supporting Facts*: In the instant case, the trial Court exceeded its authority by resolving disputed issues of fact in order to deny the Petitioner a charge on the law of self-defense. Undisputed plea, the petitioner presented evidence of self-defense. As well as petitions the trial Judge on four separate occasions for a charge on the law of self-defense. On each request the trial court responded as such:

(1) "I told you that I would not be instructing the jury on self-defense and I'm not." "We had this discussion in chambers."

(2) "Now, in this case, the testimony of the witness does not measure up to provide "sufficient evidence" upon which a self-defense defense may be made out."

(3) "I assume if Mr. Boggs had requested a self-defense instruction you all would have objected to it on the ground that there is not "sufficient evidence" to establish it."

(4) "The Jury 'might' be confused about that issue, about whether or not the were acting properly in self-defense." Self-defense isn't going

to be charged because there is not "sufficient evidence" to support it or from which a jury could reasonably infer it." Pursuant to United States v. Goetz, 746F.2d 705 (1984) "No fact, not even an undisputed fact, may be determined by the Judge." Question of intent with which act is done is one of facts an is for Jury determination. State v. Lee-Grigg, 649 S.E. 2d 41, 374 S.C. 388. Trial counsel was ineffective for failing to object to the trial court making unsolicited remarks on the weight, sufficiency or insufficiency of the facts and evidence of self-defense, credibility of witness and guilt of the Petitioner.

Note: The prosecution never objected to Petitioner's requests for a self-defense instruction.

**Ground Eighteen:** That the Petitioner was denied and deprived of due process and equal protection of law under the Fifth (5th), Sixth (6th); and Fourteenth (14th) Amendments of the United States Constitution as well as Article One (1) Section Three (3) S. C. Const. Through and by way of ineffective assistance of counsel. Particularly, behind trial counsel failing to object to the trial Court giving the Jury in answer to their question concerning malice through the bailiff, outside the presence of trial counsel or Petitioner, without making the Jury's question or the Court's answer part of the record.

*Supporting Facts*: Immediately prior to sending the Jury out for its deliberations, the trial Judge gave the Jury Twenty-Eight (28) permissive inferences of malice. Some 10 minutes after deliberating, the Jury via a note, requested the addition information on malice. The trial Court failed to inform the Petitioner or trial counsel of the specific question the Jury posed on malice. Also, the trial of Judge failed read the Jury's question on malice in open court. And the trial judge failed to discuss with the Petitioner trial counsel his proposed Supplemental Malice Charge before giving it to the jury. Simply stated, the trial Judge sent the Jury it Supplemental Malice Charge through the bailiff, off the record and, without giving the Petitioner an opportunity to object.

**Ground Nineteen:** That the Petitioner was denied and deprived of due process and equal protection of law under the Fifth (5th), Sixth (6th); and Fourteenth (14th) Amendments. As well as Article One Section Three S. C. Constitution through and by way of ineffective assistance of counsel. Specifically, trial counsel failed to object when the trial Court issued an

21

unconstitutional, highly prejudicial and bias Jury Charge to the jury.

*Supporting Facts*: The Petitioner contends that trial counsel failed to object where the trial court issued the Jury the confusing, misleading and prejudicial instruction: "All 12 of you 'must' be in agreement before 'any decision may be returned.'"

The above instruction direct the attention of the Jurors to a mandatory obligation to agree without any mention of their right to dissent if dissent is founded upon reasonable conclusions reasonably arrived at and reasonably held. Without reference to both sides of the Quoin, a strong statement of a duty to agree by those Jurors in the minority as requiring a differential surrender to the views however unreasoned they may be, of the majority.

**Ground Twenty:** That the Petitioner was denied and deprived of due process and equal protection of law under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, as well as Article One Section Three S. C. Const. Through and by way of ineffective assistance of counsel. Particularly, trial counsel failed to object to the trial Court's granting the prosecution's request for a charge that malice may be inferred from the use of a deadly weapon.

*Supporting Facts*: On Direct Review, Ms. Celia Robinson, Appellate Defender presented as an Issue on Appeal that the trial court gave in over excessive unconstitutional Implied Malice Charge of Twenty-Eight (28) inferences. And individually, the malice may be inferred from the use of a deadly weapon malice charge fatally prejudiced the Petitioner. The South Carolina Court of Appeals determined that trial counsel failed to object to and, preserved for appellate review the Issue On Appeal. See State v. Alexander, 2010 – UP – 265.

At the Petitioner's postconviction hearing, trial counsel conceded that, in his opinion, the trial court's Implied Malice Charge was excessive to the point of being prejudicial to the Petitioner. Also that particularly, trial counsel agreed that the trial Judges malice may be inferred from the use of a deadly weapon unconstitutionally shifted the burden of proof on malice from the State upon the Petitioner. In that he (trial counsel) should have objected and preserved these issues for appeal. Trial counsel also stated, in the post—conviction proceeding that; "had I objected, the Petitioner would have preceded Belcher, 685 S.E.2d 802 (2009)

22

**Ground Twenty-One:** That the Petitioner was denied and deprived of due process and equal protection of law under the Sixth and Fourteenth Amendments of the United States Constitution, as well as Article One Section Three S. C. Constitution. Through and by way of ineffective assistance of counsel. Specifically, trial counsel failed to object to and seek to quash the indictment where it neglected to include the act or acts of malice the Petitioner would be held to answer for trial.

*Supporting Facts*: Supporting Facts: The indictment for assault and battery with intent to kill failed to appraise the Petitioner with reasonable certainty the nature of the accusation all or specific "act of malice" he would be put to trial for. Consequently, the indictment left the prosecution free to roam at large to shift its theory of criminal intent and malice so as to take advantage of each passing vivissitude of the trial court's twenty-eight permissive inferences of malice Jury Charge.

Trial counsel was ineffective for failing to motion the Court to quash the indictment or, in the alternative, request a more definite statement to include the act or acts of malice the State intended to proof. See United States v. Simmons, 96 U.S. 360, 362, 24 L.E.d 819 (1877) ("In an indictment upon statute, it is not sufficient to set forth the offense in the word of the statute, unless those words of themself fully, directly, and expressly, without any ambiguity, set forth all the acts necessary intended to be punished.") Rule 7 Federal Rules of Criminal Procedure 18 U.S.C.A. "an indictment must do more than simply repeat the language of the criminal statute where Petitioner's guilt depends crucially upon such a specific identification of act or acts of the element/s of malice.

**Ground Twenty-Two:** That the Petitioner was denied and deprived of due process and equal protection of law under the Sixth Amendment of the United States Constitution, as well as Article One Section Three S. C. Const. Through and by way of ineffective assistance of counsel. Concisely, trial counsel failed to petition the Circuit Court for a court – appointed psychiatrist examination and for an expert witness to assist in the preparation, utilization and presentation of the Petitioner's mental defects which yields mitigating evidence pertinent and relevant to the elements of malice and criminal intent.

*Supporting Facts*: The petitioner contends that during his post–conviction relief hearing trial counsel conceded that prior to Petitioner's trial, the Petitioner had advised him of his Twenty – Five years documented in/out patient mental health treatments for mental health defects . Trial counsel additionally

23

>  agreed that he failed to research, prepare or utilize the
>  evidentiary mental health evidence on the Petitioner's behalf.
>  Finally, trial counsel agreed that the Mental Health Exhibits
>  submitted by the Petitioner during his post – conviction relief
>  hearing possibly yielded mitigating factors which could have
>  reduced the Petitioner's culpability from assault and battery with
>  intent to kill to assault and battery of a high and aggravated
>  nature.

(Doc. 1-1 at 35–71 (errors in original)).

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of

24

the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## Exhaustion

The respondent acknowledges that the grounds raised in the petition are exhausted and timely (doc. 11 at 24–25).

## Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and
> efficiency of judicial decisions, but also the finality of those
> decisions, by forcing the defendant to litigate all of his claims

25

together, as quickly after trial as the docket will allow, and while
the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

The respondent argues that Grounds Ten, Twelve, Fourteen, Eighteen, and Twenty-One are procedurally defaulted because they were not raised to the PCR court (doc. 11 at 29). The respondent also argues that Grounds Twelve, Fifteen,[3] Seventeen, Eighteen, and Nineteen are procedurally barred because the PCR court did not rule on them with any specificity and the petitioner failed to properly file a motion to alter or amend

---

[3]The respondent states that Ground Fifteen was not ruled on with any specificity and is procedurally barred; however, the petitioner clarified certain aspects of Ground Fifteen in his response in opposition to the motion for summary judgment. Accordingly, liberally construing the filings of a *pro se* petitioner, the undersigned considers that this ground has been raised to and ruled upon by the PCR court.

the order of dismissal (*id*. at 47).  The undersigned finds that none of the petitioner's grounds are subject to procedural default.

The Fourth Circuit Court of Appeals has specifically indicated, in a habeas case filed in this District, that a petitioner can exhaust habeas claims, and thereby avoid a procedural bar, by raising them for the first time in a *pro se* brief after counsel filed a *Johnson* petition for writ of certiorari following denial of his PCR application.  *See Norris v. South Carolina*, 37 F.App'x 71 (4th Cir. 2002) (unpublished).  The Fourth Circuit Court of Appeals found that such claims were not procedurally barred but were subject to dismissal on the merits.  The Fourth Circuit cited *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) in its exhaustion analysis, which in turn cited *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (1990), in which the Supreme Court of South Carolina declared "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."  The Fourth Circuit also cited *Harris v. Reed*, 489 U.S. 355, 265 n. 11 (1989) in the *Norris* decision.  In *Harris*, the Supreme Court extended the "plain statement rule," i.e., "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Id*. at 263 (citing *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)).

Here, as previously discussed, the petitioner's PCR appellate counsel filed a *Johnson* petition in the Supreme Court of South Carolina seeking a petition for writ of certiorari (doc. 11-7).  The petitioner then filed a *pro se* petition for writ of certiorari that contained the same twenty-two issues that he raised in his federal habeas petition (docs. 11-8, 1-1).  In the order denying the petition for certiorari, the South Carolina Court of Appeals did not state that any grounds were denied because they were not properly before the court (doc. 11-13).  Accordingly, the court will consider the merits of the petitioner's claims.

### Ineffective Assistance of Counsel

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

28

**Grounds One and Two**

In Ground One, the petitioner argues trial counsel was ineffective for failing to object to the trial court's refusal to charge the jury on self-defense, and in Ground Two, the petitioner contends that trial counsel was ineffective for conceding that the evidence did not support an instruction on self-defense (doc. 1-1 at 35–37). The court concludes the petitioner is not entitled to federal habeas corpus relief based upon these allegations.

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 465–66). The PCR court found:

> Applicant . . . alleged that Counsel was ineffective when he conceded that a self-defense jury charge was not proper. Applicant testified that this was the only defense that was ever discussed between himself and counsel, never the lesser-included charge.
>
>           ***
>
> This Court finds that the Applicant has failed to meet his burden of proof. Counsel testified that although that was discussed as a potential defense, when the Applicant' sister testified, as the only eyewitness to the events, he did not feel that the testimony presented supported a self-defense charge. A defendant is entitled to a self-defense charge where the evidence shows that (1) he was without fault in bringing on the difficulty, (2) he actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, (3) a reasonably prudent person of ordinary firmness and courage would have entertained the same belief, and (4) he had no other probable means of avoiding the danger other than to act as he did. State v. Sullivan, 345 S.C. 169, 547 S.E.2d 183 (2001); State v. Anderson, 338 S.C. 277, 525 S.E.2d 901 (2000).
>
> Counsel testified that the sister's testimony did not support the fact that the victim was armed or that it was necessary for the Applicant to shoot the victim to stop the victim from hurting him or his sister. . . . Additionally, Counsel testified that he thought that the sister would be a strong witness for the defense who could help them reach the threshold of the requirement of evidence if imminent danger for bodily injury to the Applicant or sister. However, Counsel testified that the sister did not testify as she had indicated during previous conversations and he had to shift strategy for closing and focus on the lack of intent.
>
>           ***
>
> This Court finds that the Applicant has failed to meet his burden of proof as to this claim. The facts must support a jury

29

> instruction for it to be proper. <u>State v. Crosby</u>, 355 S.C. 47, 584
> S.E.2d 110 (2003) . . . . Furthermore, the facts presented at
> trial through testimony did not support the charge of self-
> defense. Counsel is an experienced trial attorney who has
> prepared and presented many criminal cases which focused on
> self-defense and he is well-aware of the elements that must be
> met for a jury charge of self-defense to be considered. Even if
> this Court were to find that Counsel was deficient for conceding
> to no self-defense charge, prejudice cannot be established. It
> is clear that the trial judge did not feel that the Applicant had
> met the threshold for the charge and would not have allowed
> the charge even if Counsel had not conceded the issue.

(App. 469–70). The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

Moreover, the record supports the PCR court's determination. At the PCR hearing, trial counsel testified that, during the trial, the petitioner's case "did not even get close to the threshold [of self-defense] based on the testimony" (app. 403). He stated that he had experience with self-defense cases, and based on his experience, the fact that the petitioner was armed and the victim was unarmed was a big problem in this case (app. 406–07). Trial counsel testified that he believed that the case would not meet the threshold for self-defense because there was no evidence of imminent threat and that there was not any testimony that it was necessary to shoot the victim to stop him (app. 411, 419).

The PCR court noted that trial counsel was aware of the requirements for a self-defense instruction and determined the petitioner was not entitled to the instruction. *See Strickland*, 466 U.S. at 689 ("[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a

court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (internal citation omitted)). Thus, the court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and, accordingly, summary judgment is appropriate with respect to these grounds.

### Ground Three

In Ground Three, the petitioner argues that trial counsel was ineffective for failing to explain to the petitioner the elements of the charges against him and the elements of self-defense (doc. 1-1 at 38–39). The petitioner is not entitled to federal habeas relief on this ground.

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 465–66). The PCR court found that,

> Applicant testified that Counsel did not review the elements of the charges he faced or possible defenses with Applicant, so that Applicant was not aware of what the State would have to prove to prove him guilty.
>
> Counsel testified that he always thoroughly interviews witness, retrieves discovery materials and then tries to explain the charges and potential sentences and defenses to his clients in laymans' terms. Counsel was very credible at the hearing and presented information to the Court that showed he was fully prepared for trial.

(App. 467). The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts

that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

The record supports the PCR court's determination.  At the PCR hearing, the petitioner testified that trial counsel failed to explain the elements of ABWIK, assault and battery of a high and aggravated nature ("ABHAN"), self-defense, and defense of another (app. 337).  He stated that he did not know what the State had to prove at trial and that he was not even sure what he was charged with (app. 342, 377).   However, trial counsel testified that it was his general practice to explain what the State needs to prove at trial in "layman's terms" (app. 409–10).  He also stated that he does not like to use legal definitions in discussions with non-lawyers but that "like on a murder case . . . [he]'ll certainly tell them what malice is and malice aforethought's a necessary element" (app. 410).

The PCR court found trial counsel's testimony credible, and this finding is entitled to deference.  *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."(citing 28 U.S.C. § 2254(e)(1))); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003) (holding that the petitioner may overcome this presumption of correctness only by showing "'clear and convincing evidence to the contrary'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 240 (2003))).  In his response in opposition to the motion for summary judgment, the petitioner states that the PCR court's credibility findings should be overturned because it failed to state specific reasons why it found trial counsel was credible and the petitioner was not (doc. 25 at 17, 39).  This argument fails to state clear and convincing evidence necessary to overcome the presumption of correctness that attaches to a PCR court's credibility finding.  Thus, the evidence presented at PCR supports the PCR court's determination that

32

trial counsel explained the elements of any relevant charges and defenses to the petitioner, and there is no evidence that the PCR court's decision was contrary to nor an unreasonable application of applicable Supreme Court precedent. Accordingly, summary judgment is appropriate with respect to this ground.

### Grounds Four and Six

Grounds Four and Six both concern "a secret in-chambers meeting" between trial counsel, the trial judge, and the solicitor. The petitioner alleges trial counsel was ineffective for failing to inform him of the contents of the meeting; he states that after the close of evidence he was informed that, in the meeting, the trial judge had determined that he would not charge the jury on self-defense and trial counsel decided that he would not pursue a trial strategy based on self-defense (doc. 1-1 at 40–41, 44–45). The petitioner is not entitled to federal habeas relief on these grounds.

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 465–66). The PCR court found that,

> The Applicant also alleged that Counsel was ineffective for failing to ensure that the Applicant was present at all critical stages of his trial. During testimony, the Applicant referenced an in chambers meeting that Counsel had with the Assistant Solicitor and the judge regarding the jury charges in his case. Based on the testimony presented, this Court interprets Applicant's claim that Counsel should have ensured that the Applicant was present for all conversations regarding his case, in particular the conversations regarding the possible jury charge for self-defense. Counsel acknowledged that he went into chambers with the trial judge and opposing counsel to discuss the requested jury charges, but testified that is standard procedure since it involves a discussion of the law and is not done in the presence of the jury. This Court finds that this allegations lacks merit. A review of the record indicates that the Applicant was present at all times during his trial before the jury. However, no Constitutional right was violated when Counsel met with opposing counsel and the judge to discuss the legal charges of the case. This Court finds no violation of the Applicant's rights and no deficient performance on Counsel's behalf. Therefore, this claim is denied and dismissed.

33

(App. 471).  The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

The Supreme Court has held that under the Due Process Clause, "a defendant . . . [has] the right to be present at any stage of the criminal proceedings that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).  However, in the present action, there is no indication that the petitioner's presence would have contributed to the fairness of the proceedings.  At the PCR hearing, trial counsel testified that this type of meeting was typical and, generally, a defendant would not participate (app. 410–11).  Trial counsel testified that he determined, based on the testimony that had come out, that there was insufficient evidence of an imminent threat to proceed with a self-defense argument (app. 411). Further, the trial transcript supports that trial counsel decided self-defense was not an appropriate argument after both parties rested[4] (app. 114).  The trial judge told trial counsel, based on their meeting he believed they were pursuing a self-defense argument, but that he was not inclined to instruct the jury on self-defense; trial counsel responded, "Judge, we're not requesting self-defense, I guess" (app. 114).  The trial court then asked the

---

[4]It is unclear from trial counsel's testimony exactly when this meeting took place.  He states that there was a meeting at the close of the State's case where he informed the trial court that he would not be seeking a self-defense instruction (app. 411); however, he also agreed that he decided not to pursue self-defense after April Alexander ("April"), the petitioner's sister, testified (*id.*).  The undersigned notes that April testified for the defense after the State rested its case (app. 81, 84).  The petitioner maintains that this meeting occurred before the start of trial, although he presents no support for his assertion (doc. 25 at 70–71).

petitioner whether he was satisfied that there was insufficient evidence to establish self-defense and the petitioner agreed (app. 115–16).

Accordingly, the PCR court correctly determined that the petitioner's presence was not required during the meeting. Thus, the petitioner has failed to show that the PCR court's decision was contrary to clearly established Supreme Court precedent, and, thus, summary judgment is appropriate with respect to these grounds.

### Ground Five

In Ground Five, the petitioner argues that trial counsel was ineffective for failing to explain to the petitioner the consequences of his failure to testify in his own defense (doc. 1-1 at 42–43). The petitioner alleges that trial counsel recommended that he should not testify because it would enable the solicitor to address the petitioner's prior conviction for manslaughter; however, after it was determined that he would not be pursuing a self-defense instruction, the petitioner contends that he had nothing left to lose by testifying (*id*.). The petitioner is not entitled to federal habeas relief on this ground.

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 465–66). The PCR court found:

> Applicant alleged that Counsel failed to define his right to testify as to the facts to help establish the self-defense claim.
>
> ***
>
> Counsel testified that he discussed the pros and cons of the Applicant testifying at trial with Applicant, but recommended that Applicant not testify because of the fact that his previous conviction for voluntary manslaughter would be able to be used against him. Although Counsel testified that he advised Applicant that it was his decision.
>
> ***
>
> This Court finds that the Applicant has failed to meet his burden of proof as to this claim.

(App. 469–70). The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.

35

First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

The record supports the PCR court's determination. At the PCR hearing, the petitioner testified that, prior to trial, trial counsel informed him of his right to testify and told him that if he did testify, his prior conviction would come into evidence (app. 347). However, he stated that trial counsel did not adequately explain his right to testify on his own behalf throughout the course of the trial and that he had a mistaken idea about what questions the solicitor could ask him concerning his prior conviction (app. 347–48). The petitioner testified that he believed it was "very possible" that the jury would have considered self-defense if he had testified (app. 348).

Trial counsel testified that he would have discussed the petitioner's right to testify with him several times prior to trial and that he generally tries to make clear to a client that he has the right to testify but that no one can make him testify (app. 405). He stated that he generally goes over the pros and cons of taking the stand with respect to cross-examination and credibility (*id.*). Trial counsel also stated that he always informs a client that it is his decision whether to testify and he can only provide advice (app. 406).

As previously discussed, the PCR court found that trial counsel's testimony was credible. *See Cagle*, 520 F.3d at 324 ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."); *Fisher v. Lee*, 215 F.3d 438, 446 (4th Cir. 2000) ("Fisher has not shown that the state court findings are unreasonable, unsupported, or otherwise erroneous. Indeed, they are supported by competent evidence."). Moreover, the colloquy with the trial judge plainly supports the determination that the petitioner made the decision not to testify (*see* app. 82–84). *See Carter v. Lee*, 283 F.3d 240 (4th Cir. 2002) ("[T]he advice provided by a criminal defense

36

lawyer on whether his client should testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'" (citation omitted)); *see also Harrison v. Moats*, 165 F.3d 911 (4th Cir. 1998) (unpublished table decision) (no habeas relief on claim that counsel "failed to adequately advise [the petitioner] of his right to testify in his own defense" where, *inter alia*, petitioner's counsel "testified that he informed [petitioner] of his right to testify and told him that it was his decision to make"). Thus, summary judgment is appropriate with respect to this ground.

### Grounds Seven, Thirteen, and Twenty

In Grounds Seven, Thirteen, and Twenty, the petitioner alleges that trial counsel was ineffective for failing to object to various jury instructions given by the trial court. Specifically, in Ground Seven, the petitioner alleges that trial counsel was ineffective for failing to object to the solicitor[5] and the trial court providing numerous definitions of "malice" to the jury; the petitioner contends that several of the definitions were unconstitutional (doc. 1-1 at 46). It appears that the petitioner also argues that trial counsel was ineffective for failing to object to the trial court's erroneous statement of the elements of ABHAN (*id*. at 46–48). The petitioner contends that these errors precluded the jury from finding him guilty of ABHAN instead of ABWIK (*id*. at 48).

In Ground Thirteen, the petitioner alleges that trial counsel was ineffective for failing to object to the trial court's "erroneous and prejudicial general intent to kill instruction" because it unconstitutionally shifted the burden of proof to the petitioner to prove that he was acting in self-defense "or in a high and aggravated nature as opposed to with an intent to kill"[6] (*id*. at 57). In Ground Twenty, the petitioner alleges trial counsel was ineffective for

---

[5]To the extent that the petitioner alleges ineffective assistance for failure to object to any instances of prosecutorial misconduct, those claims will be discussed below with Grounds Eight, Nine, Eleven, and Sixteen.

[6]To the extent that the petitioner argues that any error in the trial court's general intent to kill instruction is actually an error in the indictment (*see* doc. 25 at 79), the undersigned addresses the allegations concerning the indictment in Ground Twenty-One.

failing to object to a requested jury instruction that malice may be inferred from the use of a deadly weapon (*id*. at 66).  The petitioner is not entitled to federal habeas relief on these grounds.

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 465–66).  The PCR court found:

> The Applicant alleged that Counsel was ineffective for failing to object to several prejudicial statements made by the Solicitor and the trial court, including the use of the phrase "malice and malice aforethought."  The Applicant testified that the State, during closing arguments, mentioned "malice," "inferences," and "opinions," fourteen times and Counsel should have objected.  The Applicant also testified that the trial judge mentioned "malice" twenty-eight times during the jury charges and Counsel should have objected.
>
> *** 
>
> This Court finds that the Applicant's argument that Counsel should have objected to the court's use of the word "malice" during the charge lacked merit.  After reviewing the record, this Court finds that the jury charge given by the trial judge was proper and well-within the law at the time of Applicant's trial, so there is no deficient performance for Counsel's failure to object.  Additionally, the number of times Applicant indicates the word "malice" was used includes both the jury charge and supplemental charge.  Therefore, the claim is denied and dismissed.
>
> *** 
>
> The Applicant also alleged that Counsel was ineffective for failing to object to the implied malice jury charge in light of the South Carolina Court of Appeals opinion in State v. Belcher, 385 S.C. 597, 685 S.E.2d 802 (2009).  This Court finds that this allegations is without merit.  The jury charge that was given was a correct statement of the law as it existed at the time of trial and was supported by the facts presented at trial.
>
> In this case, the jury instructions regarding assault and battery with intent to kill were proper at the time of trial.

(App. 466–70).  The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts

that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

At the PCR hearing, the petitioner testified that the trial court gave too many definitions of malice to the jury; the petitioner contends that there was no evidence of malice during the trial and it is unclear what act of malice the jury used to convict him (app. 344). He stated that trial counsel should have requested an instruction that the presence of malice did not preclude a finding that he had committed ABHAN instead of ABWIK (app. 349). He testified that it was erroneous and confusing to tell the jury that ABHAN was not a crime of violence (app. 362–63). He further testified that trial counsel should have asked for an instruction that the jury could find malice was present and still find the petitioner had committed ABHAN rather than ABWIK (app. 393).

Trial counsel testified that the petitioner's arguments concerning the malice instructions were proper after the decision in *State v. Belcher*, 685 S.E.2d 802 (S.C. 2009), and "that whole malice argument could have been kicked out or the inferred malice argument could have been kicked out"; however, at the time of the trial, *Belcher* had not been decided (app. 415). Trial counsel stated that he based his decision not to object to the instruction on the law as it existed at the time (app. 423). Trial counsel was asked to comment on whether the malice charge placed the burden on the petitioner; trial counsel responded that he did not see how it shifted the burden to the petitioner and the question was withdrawn (app. 424).

In support of Grounds Seven and Twenty, the petitioner discusses at length the *Belcher* decision. In *Belcher*, the Supreme Court of South Carolina noted that it had long been the practice for the trial courts in South Carolina to charge juries in any murder prosecution that the jury may infer malice from the use of a deadly weapon. *Belcher* held that a jury charge instructing that malice may be inferred from the use of a deadly weapon was no longer good law in South Carolina where evidence is presented that would reduce,

39

mitigate, excuse, or justify the homicide.  However, *Belcher* expressly states that its holding would not apply to convictions challenged on post-conviction relief. 685 S.E.2d at 801. Here, the petitioner was tried in June 2007—approximately two years before the *Belcher* decision (*see* app. 1).  There has been no evidence presented that the jury instruction was improper under the law as it existed at the time of trial.  Therefore, trial counsel's failure to object to the malice instruction was not outside the wide range of professionally competent assistance and was not below an objective standard of reasonableness.

The petitioner's argument that the jury instruction improperly shifted the burden from the State to the petitioner to demonstrate that he did not use the requisite intent to kill also fails.  The trial transcript shows that the trial judge properly stated that the that the State has the burden of proof and "[a] defendant does not have to produce any evidence because the burden is not upon a defendant to prove he is not guilty" (app. 36). The petitioner has failed to articulate how the trial court's malice instruction unconstitutionally shifted the burden of proof to him.  *See Smith v. North Carolina*, 528 F.2d 807, 809 (4th Cir. 1975) (holding that the petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus); *Strickland*, 466 U.S. at 688-89 (holding that there is "a strong presumption that counsel's conduct during trial was within the wide range of reasonable professional assistance," and reviewing courts should not scrutinize counsel's performance by looking at the decisions made in an after the fact manner; tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel).  Thus, the petitioner has failed to meet his burden of showing that trial counsel was ineffective for failing to object to these arguments, and summary judgment is appropriate with respect to these grounds.

### Grounds Eight, Nine, Eleven, and Sixteen

In Grounds Eight, Nine, Eleven, and Sixteen, the petitioner argues that trial counsel was ineffective for failing to object to instances of prosecutorial misconduct or statements the solicitor made to the jury. In Ground Eight, the petitioner contends that trial counsel was ineffective for failing to object to the solicitor's statement that ABWIK was a crime of violence while ABHAN was not a crime of violence (doc. 1-1 at 49). The petitioner alleges that the solicitor intentionally misled the jury (*id*.). In Ground Nine, the petitioner alleges trial counsel was ineffective for failing to object to the solicitor's use of perjured testimony during trial (*id.* at 51). In Ground Eleven, the petitioner argues trial counsel was ineffective for failing to object to the solicitor's *Brady*[7] violations (*id*. at 54). The petitioner states that he was not provided with a copy of a 911 audio tape, and the solicitor made seven false references to the tape (*id*.). In Ground Sixteen, the petitioner contends that trial counsel was ineffective for failing to object to the solicitor's improper comparison of the petitioner with "a guilty criminal defendant who commits a separate statutory crime of armed robbery" (*id*. at 60). The petitioner alleges that this statement was unduly prejudicial (*id*.). The petitioner is not entitled to federal habeas relief with respect to these grounds.

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 465–66). The PCR court found:

> The Applicant . . . testified that Counsel was ineffective for failing to object to various improper comments and arguments made by the Solicitor during the trial. Although PCR Counsel pointed to arguments and comments which might be somewhat confusing and improper (violence v. violent and bank robber). The Applicant failed to meet his burden of proof in showing that Counsel was deficient in failing to object to these comments. This Court also finds that even if Counsel was deficient for failing to object to these comments, the Applicant failed to

---

[7]In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court "held that when a State suppresses evidence favorable to an accused that is material to guilt or to punishment, the State violates the defendant's right to due process, 'irrespective of the good faith or bad faith of the prosecution.'" *Cone v. Bell*, 556 U.S. 449 (2009) (citing *Brady*).

demonstrate that he was prejudiced by these statements made by the Solicitor and that the objections would have been sustained or the outcome of the trial would have been any different.

\*\*\*

Applicant also alleged that he believed his sister presented perjured testimony on the stand and gave inconsistent statements because of illegal tactics by the police and prosecutors.

This Court finds that the Applicant failed to meet his burden of proof as to this claim.

\*\*\*

In so much as the Applicant is attacking the comments made by the State during his trial, this Court has ruled that those allegations are without merit and did not prejudice the Applicant. Therefore, they are dismissed.  As to any other allegations of prosecutorial misconduct, the Applicant failed to produce any testimony or evidence in support of the allegation at his hearing.  Therefore, this Court finds that he has failed to meet his burden of proof and it is denied and dismissed.

(App. 466–67, 470, 471A–471B).   The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

With respect to the petitioner's argument, in Ground Eight, that the solicitor intentionally misstated the law regarding whether ABHAN is a crime of violence under South Carolina law, it appears that ABHAN is now considered a crime of violence in South Carolina; however, in 2007, it was not a crime of violence (*see* doc. 1-1 at 46–47). *Compare* S.C. Code Ann § 16-1-60 (2015), *with* S.C. Code Ann. § 16-1-60 (2007).  The trial court also correctly charged the jury that ABHAN requires an assault and battery "accompanied by some circumstance of aggravation," which may include "the use of a

42

deadly weapon in the commission of an assault and battery" (app. 157–58). *See State v. Coleman,* 536 S.E.2d 387, 389 (S.C. Ct. App. 2000).

In Ground Nine of the petition, the petitioner does not state whose testimony was perjured or whose voluntary statement should have been presented to the jury. The respondent assumed in his motion, and the petitioner clarified in his response in opposition, that he was referring to his sister April (*see* doc. 25 at 81).

In order to prevail on his claim that the solicitor knowingly used perjured testimony to secure the petitioner's conviction, the petitioner must prove: "(1) the testimony was false; (2) the Government knew the testimony was false; and (3) there is a reasonable probability that the false testimony could have affected the verdict." *U.S. v. Roane*, 378 F.3d 382, 400 (2004) (internal quotation marks and citations omitted). Here, the petitioner is unable to establish that perjured testimony was presented or that the prosecution knew the testimony was false. It appears from the record that April did not testify as the petitioner and trial counsel had anticipated at trial (app. 403). However, the petitioner has provided no evidence that the testimony at trial was false beyond his own conclusory allegations.[8] *See Roane*, 378 F.3d at 401 ("[C]onclusory allegations that the Government should have known that a statement was false, without more, do not warrant an evidentiary hearing or offer escape from summary judgment.").

Regarding the petitioner's allegation, in Ground Eleven, that the solicitor's actions violated *Brady*, "[a] *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused." *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006). Evidence is favorable if it is either exculpatory or impeaching. *Strickler v.*

---

[8]To the extent that the petitioner is arguing that trial counsel was ineffective for failing to offer other "evidence of material fact not introduced at trial" in response to the perjured testimony, the petitioner has not stated what evidence should have been offered. *See Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) ("The great failing of the appellant on his claim that other evidence should have been presented during the sentencing phase of his trial is the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called.").

*Greene*, 527 U.S. 263, 281–82 (1999).  "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Youngblood*, 547 U.S. at 870 (citation omitted). To show a *Brady* violation, the petitioner must show: (1) the evidence was favorable to the accused; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) prejudice ensued.  *See Strickler*, 527 U.S. at 281–82.

Here, there has been no such showing.  The petitioner has alleged that because he did not have a copy of the recording, the solicitor was able to make false references to the tape that did not truthfully depict his state of mind or his request for immediate assistance for the victim (doc. 1-1 at 55).  However, during his opening statements, trial counsel stated that "the testimony is going to show that immediately [the petitioner] called 9-1-1 and said get over here, a man has been shot.  9-1-1, you will hear the tapes, asks what's going on" (app. 39).  On cross-examination of the victim, the victim agreed that "[the petitioner was real excited and he was yelling at 9-1-1 to get somebody over that, that [the victim] had been shot" (app. 58L).  He also agreed that the petitioner was administering first aid and had called for an ambulance (*id.*).  Trial counsel stated at closing that calling 911 and administering first aid are not the actions of someone acting with the intent to kill (app. 132).  Trial counsel also alluded to the fact that the State failed to let the jury hear the recording in his closing argument (app. 132).

There is no evidence in the record that trial counsel did not have a copy of the recording; that the 911 recording was favorable to the petitioner beyond proving that he had called 911, which was undisputed; or that the solicitor willfully or inadvertently failed to provide the petitioner with a copy of the recording.  Trial counsel refers to the recording throughout the trial.  Further, it was not material to the petitioner's guilt or innocence because it does not confirm the petitioner's version of the events. The petitioner does not allege that the recording would have shown that the victim attacked the petitioner and he

44

was acting in self-defense.  Thus, it cannot be said that it "could reasonably be taken to put the case in such a different light as to undermine confidence in the verdict."  *Strickler*, 527 U.S. at 290 (*internal quotation marks and citation omitted).

With respect to the petitioner's argument, in Ground Sixteen, that the solicitor improperly compared him to a guilty robber at closing and so unduly influenced the jury, the Fourth Circuit Court of Appeals has recognized that a prosecutor's improper argument "'may so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.'" *U.S. v. Wilson*, 135 F.3d 291, 297 (4th Cir. 1998) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181(1986)).  A court reviewing an alleged improper argument of a prosecutor must consider whether the remarks were, in fact, improper, and, if so, whether the improper remarks so prejudiced the defendant's substantial rights that the defendant was denied a fair trial. *Id.*  In evaluating the issue of prejudice from improper prosecutorial argument, the court should look to the following factors: "(1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury."  *U.S. v. Scheetz*, 293 F.3d 175, 186 (4th Cir. 2002).

A federal court addressing a habeas petition from a state criminal proceeding must also be mindful of the limited standard of review.  As previously stated, a habeas petition should be granted only where the state court decisions are "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

45

The "bank robber" analogy used in the prosecution's closing argument does not rise to the level contemplated by the Supreme Court (*see* app. 135)*. See also Darden,* 477 U.S. at 179 (holding that the prosecutor's comments implying the petitioner was on furlough from prison, that the death penalty was the only way to prevent the petitioner from committing more crimes, and calling the petitioner an "animal" were inappropriate but did not so infect the trial with unfairness as to render the resulting conviction a denial of due process). Moreover, even if the solicitor's analogy was deemed to be improper, the comments did not infect the trial with unfairness as to make the resulting conviction a denial of due process. There is no indication that the solicitor offered the remarks with an intention to mislead the jury or that the remarks otherwise diverted the jury's attention from the evidence during the trial. Hence, the solicitor's use of a "bank robber" analogy provides no basis for habeas relief.

Based upon the foregoing, trial counsel's failure to object to the acts and statements of the solicitor was not a deficient performance under *Strickland*. Therefore, summary judgment is appropriate with respect to these claims.

**Grounds Fifteen and Twenty-Two**

The petitioner's Grounds Fifteen and Twenty-Two concern trial counsel's investigation and preparation for trial. In Ground Fifteen, the petitioner contends that trial counsel was ineffective for failing to present a voluntary statement given by a defense witness that supported his self-defense claim and was exculpatory evidence (doc. 1-1 at 59). In Ground Twenty-Two, the petitioner argues that trial counsel was ineffective for failing to request a court ordered psychiatric exam and an expert witness to establish mitigating circumstances (*id.* at 70–71). The petitioner is not entitled to federal habeas relief on these grounds.

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 465–66). The PCR court found:

46

The Applicant alleged that Counsel failed to prepare and investigate properly in order to present a meaningful defense. . . . A review of the transcript also supports the conclusion that Counsel was fully prepared and represented the Applicant properly at trial. To establish counsel was inadequately prepared, an Applicant must present evidence of what counsel could have discovered or what other defenses could have been pursued had counsel been more fully prepared. Jackson v. State, 329 S.C. 345, 495 S.E.2d 768 (1998); Skeen v. State, 325 S.C. 210, 481 S.E.2d 129 (1997) (applicant not entitled to relief where no evidence presented at PCR hearing to show how additional preparation would have had any possible effect on the result at trial).

In particular, the Applicant alleged in his application that Counsel should have investigated and advised the Applicant on pursuing an insanity defense at trial. However, the Applicant failed to meet his burden of proof as to this claim. The Applicant only provided testimony that he had struggled with depression, anxiety and destructive behavior, which included attending anger management. An Applicant claiming that trial counsel was ineffective in failing to pursue this defense "must produce some evidence of insanity or showing that with the exercise of due diligence, an insanity defense could have been developed." Jeter v. State, 308 S.C. 230, 233-34, 417 S.E.2d 594 (1992). The Applicant must show that he was "unable to distinguish moral or legal right from wrong and to recognize the particular act charged as morally or legally wrong." The only evidence produced reflect that the Applicant had attended anger management classes.

As to Applicant's claims that Counsel failed to fully investigate and prepare to present a defense at trial, this Court finds that the Applicant has failed to meet his burden of proof. The Applicant failed to establish what, if anything, Counsel would have discovered if additional investigation had occurred. The Applicant also presented no evidence that there was ever a claim that he lacked the capacity to understand the difference between right and wrong and, in fact, presented testimony to support the fact that he knew what he was doing and felt justified in shooting the victim because he felt he was doing it in self-defense. Therefore, this Court finds that this claim is denied and dismissed.

(App. 467–68). The PCR court's denial of the petitioner's ineffective assistance claim was

neither contrary to nor an unreasonable application of applicable Supreme Court precedent.

First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court

precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts

47

that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

The record supports the PCR court's decision. In Ground Fifteen, the petitioner claims that his trial counsel was ineffective for failing to use a voluntary statement provided by a defense witness[9] that would have helped to establish his self-defense argument.[10] The petitioner testified that the voluntary statement established that he and the victim had been fighting and the victim rushed at him (app. 346–47). However, trial counsel questioned April about the incident and her voluntary statement; April testified that the victim was coming towards the petitioner in an aggressive manner; she testified several times about the content of her voluntary statement and used it to refresh her memory on direct and cross examination[11] (app. 96–98). The petitioner has presented no evidence that the voluntary statement contains information that is anything other than cumulative. Stating that there is a possibility that the outcome of the proceeding could have been different does not meet the "reasonable probability" standard under *Strickland*. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Thus, even construed in a light most favorable to the petitioner, the record fails to show that trial counsel was ineffective or that but for his alleged ineffectiveness, the outcome of the petitioner's trial would have been different.

---

[9]April was the only witness for the defense (app. 81, 84).

[10]Portions of April's three-page voluntary statement are scattered throughout the record and the petitioner's filings. There are legible copies of the first two pages (app. 277, 295; doc. 36-4); however, the third page is a very poor copy and parts of it are illegible (*see* app. 436).

[11]At one point during his direct examination of April, trial counsel moved to admit the statement into evidence, the solicitor objected, and the trial court sustained the objection (app. 98).

Trial counsel also reasonably chose not to provide details at trial regarding the petitioner's mental health. At the PCR hearing, trial counsel testified that he "vaguely remembered [the petitioner] having counseling sessions or something like that—with the mental health clinic here at Spartanburg Regional"; however, "it certainly wasn't to the extent where *M'Naughton* would kick in. He certainly was capable of assisting in his own defense and understood what he as charged with and the difference between right and wrong" (app. 412). He further testified that "[a]s far as mitigation at trial, . . . I'm not sure in a case like this you'd want to bring out the fact that he is being treated because he couldn't control his anger" (*id*.) Decisions about what types of evidence to introduce "are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce." *Pruett v. Thompson,* 996 F.2d 1560, 1571 n. 9 (4th Cir. 1993) (citation omitted); *see also Bunch v. Thompson,* 949 F.2d 1354, 1364 (4th Cir. 1991). "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

The relevant question in determining whether counsel's performance was constitutionally acceptable is not what the best lawyers would have done or what most good lawyers would have done, but instead whether a reasonable lawyer could have acted, in the circumstances, as defense counsel acted. *Gilbert v. Moore*, 134 F.3d 642, 655 (citing *Walters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995)). Thus, summary judgment is appropriate with respect to these grounds.

**Ground Fourteen**

In Ground Fourteen, the petitioner argues that trial counsel was ineffective for failing to object to the trial court's sentencing him to life without parole when he did not receive timely notice from the State. The petitioner is not entitled to federal habeas relief on this ground.

49

Here, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland* (app. 465–66). The PCR court found:

> The Applicant alleged during the hearing that Counsel was ineffective for failing to ensure that he had been properly given notice that the State intended to seek a sentence of life without parole. Applicant alleged that the State served him at his house, but gave the notice to his younger sister, who was not eighteen at the time and should not have been given the notice. However, Counsel testified that he received a letter regarding the notice several months well in advance of trial and then he and the Applicant were personally served at the courthouse approximately two weeks before trial. This Court finds that this allegation lacks merit. The record reflects a served Notice to seek life without parole, which was served within the statutorily required time. Therefore, this claim is denied and dismissed.

(App. 470–71). The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

At the PCR hearing, trial counsel testified that he remembered the petitioner being served with notice that the State was pursuing life without parole "about two weeks or so before trial" (app. 407). *See James v. State*, 641 S.E.2d 899, 903 (S.C. 2007) ("[S]o long as the defendant and his counsel, at least ten days prior to trial, possess actual notice of the State's intention to seek a sentence under South Carolina's recidivist statute, the statute has been satisfied."). The PCR court's determination is clearly an interpretation of state criminal law, not federal law as required for habeas relief. *See Jeffcoat v. Warden of Broad River Corr. Inst.*, No. 8:13-cv-0124-DCN, 2014 WL 131271, at *11 (D.S.C. Jan. 13, 2014) (holding that the PCR court's determination that the petitioner had received proper notice of the State's intent to seek life without parole "was an interpretation of state criminal law, not federal law as required for habeas relief"). It is not the province of this court to

50

determine if state courts made errors concerning state law. Therefore, summary judgment should be granted on Ground Fourteen.

### Ground Ten

In Ground Ten, the petitioner alleges that trial counsel was ineffective for failing to object to the solicitor's inaccurate statements regarding the injuries sustained by the victim (doc. 1-1 at 52–53). The petitioner states that the solicitor indicated that the injuries were life threatening when they were not life threatening and that she misstated what parts of the victim's body had been injured[12] (*id.*). This issue was not raised to or ruled upon by the PCR court; however, as previously discussed, the petitioner is entitled to habeas review of this claim. The petitioner is not entitled to federal habeas relief on this ground.

Upon review of the record, it appears that the solicitor did not refer to any "life threatening injuries" in her closing argument. She stated that the victim suffered a "serious injury" and that he was shot in the stomach (app. 138, 143–44). However, the failure of trial counsel to object to these statements does not rise to the level of ineffective assistance of counsel.

Dr. Vidal Patel, a doctor at Spartanburg Regional Hospital who treated the victim's gunshot wound, testified at trial (app. 79). He stated that the victim was "brought in as a code trauma for the gunshot wound to the left side of his abdomen, and apparently upon his arrival I saw that he had pantreen (sic) trauma on the left side of his abdomen transversing into his pelvis. On x-ray the bullet was in his pelvis, and I was concerned about him having received injuries to his rectum, bladder and other vascular injuries" (app. 80). He explained that the staff surgically explored the abdomen and found a rectal injury

---

[12]To the extent that the petitioner is alleging that trial counsel failed to prepare for trial or that the solicitor committed prosecutorial misconduct, those claims are discussed above.

(*id*.)  When asked if he would "classify his injuries as life threatening at the time he came into [the] facility," Dr. Patel responded, "Absolutely" (*id*.).

The petitioner has failed to point to any violation of clearly established Supreme Court precedent by trial counsel for failing to object to the solicitor's statements that the victim was shot in the stomach instead of the pelvis and there was support in the record that the victim's injuries were life threatening.  Accordingly, summary judgment is appropriate with respect to this ground.

### Ground Twelve

In Ground Twelve, the petitioner argues that trial counsel was ineffective for failing to pursue a *Missouri v. Seibert*, 542 U.S. 600 (2004), defense violation where the investigating detectives inserted *Miranda*[13] warnings in the "midst of coordinating and continuing interrogation that was designed to mislead and deprive the petitioner of knowledge essential to his ability to understand the true nature of his right to remain silent or the consequences of abandoning it" (doc. 1-1 at 56).  This issue was not raised to nor ruled upon by the PCR court; however, as previously discussed, the court will review the merits of this claim.  A review of the record indicates that the petitioner is not entitled to federal habeas relief on this ground.

At trial, the solicitor and trial counsel informed the trial court that there were three statements made by the petitioner to police officers (app. 22).  The solicitor and trial counsel agreed that the first two statements were made before the petitioner was in custody; thus, these statements were not subject to *Miranda* (*id*.).  The third statement was

---

[13]*Miranda v. Arizona*, 384 U.S. 436 (1966), holds that the "'[t]he defendant may waive effectuation' of the rights conveyed in the warnings 'provided the waiver is made voluntarily, knowingly and intelligently.'" *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Miranda*, 384 U.S. at 444)).  The inquiry has two distinct dimensions: (1) waiver of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  *Id*.

given after the petitioner was handcuffed in the back of a patrol car after he had received *Miranda* warnings (*id.*).  The trial judge asked trial counsel a series of questions about the voluntariness of the petitioner's third statement (app. 26–27).  It was undisputed that the third statement was voluntarily made, and the trial court determined that the petitioner was aware of his right to remain silent, that the petitioner did not invoke his right to remain silent prior to the statement, and that the statement was admissible (app. 27–28).  Moreover, at trial, Officer William Gary testified that he was called to the scene of the shooting; he stated that the petitioner was at the scene, and the victim had been taken to the hospital when he arrived (app. 66).  He testified that he asked the petitioner what had happened but that the petitioner was free to leave and was not under arrest (app. 67).  Officer Gary stated that he asked the petitioner whether his sister had shot the victim, and the petitioner told him that he did not know (app. 68).  He then asked the petitioner if he had shot the victim, and the petitioner said, "With what?" and patted his pants (*id.*).  He repeated the question, and the petitioner again replied, "With what?" (*id.*).  Officer Gary testified that he walked a couple of doors down and then received a call from another officer at the hospital (*id.*).  After that, the petitioner was placed under arrest and was placed in the back of a patrol car (app. 69). Officer Gary stated that he read the petitioner his *Miranda* rights off a card that he keeps with his badge (*id.*).  He testified that the petitioner appeared to understand his rights, did not ask any questions, did not appear intoxicated, did not indicate that he did not understand his rights, was not promised anything for his statements, and was not coerced into making a statement (app. 69–70).  Officer Gary stated that he asked the petitioner what had happened, and he said that he did not know (app. 70).

The question-first strategy refers to: "first, intentionally withholding *Miranda* warnings from a suspect and questioning the suspect until securing a confession; then obtaining a waiver of *Miranda* rights from the suspect and covering the same material." *U.S. v. Mashburn*, 406 F.3d 303, 307 (4th Cir. 2005).  The improper purpose of

53

question-first is to get a confession the suspect would not make if he understood his rights at the outset. *Seibert*, 542 U.S. at 613 (emphasizing that with one confession in hand before the warnings, the interrogator can count on getting its duplicate with little trouble). The issue when interrogators question first and warn later is whether it would be reasonable to find that in those circumstances the warnings could function effectively as *Miranda* intends. *Id.* at 611–12. *Miranda* warnings advise the suspect that he has a real choice about giving an admissible statement. *Id.* at 612. "[W]hen *Miranda* warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and 'deprive' a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Id.* at 613–14 (citing *Moran*, 475 U.S. at 424).

The Court's plurality in *Seibert* held that the admissibility of warned statements that follow on the heels of unwarned statements depends on whether *Miranda* warnings delivered mid-interrogation could be effective enough to accomplish their object-taking into account:

> [T]he completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.

*Id.* at 615 (identifying facts that bear on whether *Miranda* warnings delivered mid-interrogation are admissible).

The Court's plurality in *Seibert* distinguished its decision from *Oregon v. Elstad*, 470 U.S. 298, 314 (1985), where it had held that absent improper tactics, a subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. *Seibert*, 542 U.S. at 615 (plurality opinion) (distinguishing a good faith *Miranda* mistake from the intentional question-first strategy).

54

"The admissibility of postwarning statements should continue to be governed by the principles of *Elstad* unless the deliberate two-step strategy was employed." *Id*. at 622 (arguing that "postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made").

As previously stated, it was determined at trial that the petitioner had given his statements freely, voluntarily, knowingly, and intelligently after he was advised of his rights and waived those rights (app. 24–25). There is no indication that a "deliberate two-step strategy" was employed. At the time of his first two statements, the petitioner was not in custody; Officer Clayton Bradley stated that he was being treated as a witness (app. 41). The victim did not tell the officers that the petitioner had shot him until he was in the ambulance (app. 57); at that time, the petitioner was placed under arrest and given *Miranda* warnings (app. 69). Because the Court of Appeals' decision denying the petition for writ of certiorari is supported by the record and the relevant case law, the petitioner is unable to establish that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, summary judgment should be granted with respect to this claim.

### Grounds Seventeen and Twenty-One

In Ground Seventeen, the petitioner argues that trial counsel was ineffective for failing to object to the trial court's unconstitutional resolution of factual issues (doc. 1-1 at 61–75). The petitioner alleges that the trial court's statements that there was "insufficient evidence" to charge the jury on self-defense was a determination of fact (*id*.). In Ground Twenty-One, the petitioner argues that trial counsel was ineffective for failing to object to or seek to quash the indictment because the indictment failed to include the act or acts of malice that the petitioner "would be held to answer for at trial" (doc. 1-1 at 68–69). These issues were not raised to or ruled upon by the PCR court; however, as previously

55

discussed, the court will discuss the merits of these claims.  The petitioner is not entitled to federal habeas relief on these grounds.

      As an initial matter, jury instructions are not questions of fact reserved for the jury.  Further, Grounds Seventeen and Twenty-One are matters of State law and federal habeas corpus relief is not available to correct errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984).  In light of *McGuire,* federal habeas courts have consistently held that errors of state law cannot be repackaged as federal errors simply by citing the due process clause.  *E.g., Carson v. Dir. of Iowa Dep't of Corr. Servs.,* 150 F.3d 973, 975 (8th Cir. 1998).  The petitioner cannot show how the failure to charge self-defense or an error in the indictment was anything other than a state court error. *See Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998) (finding that state indictments are matters of state law that are not subject to review in federal habeas corpus). *Wilson v. Corcoran,* 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in federal courts"); *State v. Bruno*, 473 S.E.2d 450, 451–52 (S.C. 1996) (listing the elements of self-defense and holding that an appellant is not entitled to self-defense instruction where he had presented no evidence that "he believed he was in imminent danger of losing his life or sustaining serious bodily injury").

      Here, the South Carolina Court of Appeals acknowledged that the petitioner had filed a *pro se* petition for writ of certiorari, stated that it had carefully considered the entire appendix, and denied the petition (doc. 11-13).  Therefore*,* this court is bound by the state court of appeals' construction of South Carolina law.  Even if this court disagreed with the state court's factual findings, it may not grant relief based upon those factual findings unless they are objectively unreasonable. § 2254(d)(2).  Further, those findings are entitled to a presumption of correctness that the petitioner must rebut by clear and convincing

56

evidence.  § 2254(e)(1).  The petitioner has failed to meet this standard, and, thus, summary judgment is appropriate with respect to these grounds.

### Ground Eighteen

In Ground Eighteen, the petitioner argues that trial counsel was ineffective for failing to object to the trial court answering a jury question regarding malice outside the presence of trial counsel or the petitioner (doc. 1-1 at 63–64).  The petitioner states that the trial court also failed to make the jury question and the trial court's answer a part of the record (*id.*).  The petitioner is not entitled to federal habeas relief on this ground.

At the PCR hearing, the petitioner testified that after the evidence was turned over to the jury, he was escorted to the holding cell (app. 371).  He stated that five minutes later, he was brought back to the courtroom and trial counsel told him that the jury had a question on malice (*id.*).  The petitioner testified that he waited approximately ten minutes and was led back to the holding cell (*id.* at 371–72).  Trial counsel was not asked about this issue.

There is nothing in the trial transcript regarding a question by the jury (*see* app. 1–169).  Other than the petitioner's own conclusory allegations, there is no evidence that a question was asked, that petitioner was not present for the question, or that trial counsel was not present for the question.[14]  Thus, the petitioner has not shown that the State courts erred by clear and convincing evidence.  *See* 2254(e)(1); *see also Ross v. Commc'n Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989) (holding that conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion).  Accordingly, summary judgment is appropriate with respect to this ground.

---

[14]In his response in opposition to the motion for summary judgment, the petitioner asserts for the first time that a bailiff told him about the jury question (doc. 25 at 54).  He has provided no other support for this allegation.

**Ground Nineteen**

In Ground Nineteen, the petitioner alleges that trial counsel was ineffective for failing to object to an "unconstitutional highly prejudicial and bias" jury instruction (doc. 1-1 at 65). The petitioner states that the trial court incorrectly instructed the jury that "All twelve of you 'must' be in agreement before 'any decision may be returned'" (*id.* (emphasis in original)). He contends that this instruction unfairly focused on their obligation to agree without mentioning their right to dissent (*id.*). The petitioner is not entitled to federal habeas relief on this ground.

The Supreme Court of South Carolina has held that a "trial court 'correctly stated the applicable law' when it charged the jury in the sentencing phase of a . . . trial 'your verdict or recommendation . . . must be unanimous on each count, that is, your verdict or recommendation must be the verdict or recommendation of all twelve of you.'" *Winkler v. State*, 2016 WL 6900872, at *7 (S.C. Nov. 23, 2016) (some alterations in original) (quoting *State v. Copeland*, 300 S.E.2d 63, 70(S.C. 1982)). The record here clearly reflects that the trial judge was charging the jury that their verdict must be unanimous when stating they "must be in agreement" in reaching a verdict. Moreover, the petitioner has not established a violation of clearly established Supreme Court precedent; thus, summary judgment is appropriate with respect to this ground.[15]

## THE PETITIONER'S MOTION FOR DEFAULT JUDGMENT

The petitioner moved for default judgment based on his allegation that the respondent failed to timely plead or otherwise answer the petition (docs. 15, 24). The

---

[15]The petitioner's response to the motion for summary judgment is long and repetitive and can be difficult to understand. To the extent that the petitioner intends to make new arguments in his response in opposition to the motion for summary judgment, those arguments are not proper and have not been addressed by the undersigned (*see, e.g.,* doc. 25 at 14 (implying the PCR court intentionally failed to include exhibits in the record), 99 (stating that the PCR court distorted and covered-up facts and evidence). *See also Temple v. Oconee Cty.*, C/A No. 6:13-144-JFA-KFM, 2014 WL 4417702, at *13 (D.S.C. Sept. 8, 2014) (new matters cannot be raised in a response in opposition to a motion for summary judgment (citing *White v. Roche Biomedical Labs.*, 807 F.Supp. 1212, 1216 (D.S.C. 1992))).

respondent argued that his motion for summary judgment was timely and that default judgment was not available in habeas cases (doc. 27 at 1).  Even if the court were to assume that the motion for summary judgment and return were late, "[p]ursuant to Rule 55(e) of the Federal Rules of Civil Procedure, as well as applicable case law, entry of default is not warranted against the Respondent simply because Respondent filed a motion for extension of time to file a return."  *Garland v. Warden*, No. C/A: 4:08-1668-JFA-TER, 2008 WL 4834597, at *2 (D.S.C. Nov. 4, 2008); *Bermudez v. Reid*, 733 F.2d 18, 21 (2nd Cir. 1984) ("Were district courts to enter default judgments without reaching the merits of [habeas] claim, it would not be the defaulting party but the public at large that would be made to suffer, by bearing either the risk of releasing prisoners that in all likelihood were duly convicted, or the costly process of retrying them.").  Accordingly, the petitioner's motion for default judgment should be denied.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 12) be **granted** and the petition be **denied**, that the petitioner's motion for default judgment (doc. 15) be **denied**, and that the petitioner's motion for summary judgment (doc. 16) be **denied**.


**IT IS SO RECOMMENDED**

s/ Kevin F. McDonald
United States Magistrate Judge

January 13, 2017
Greenville, South Carolina

59

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).