IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| John Douglas Alexander, #194748, | ) | |
| | ) | |
| Petitioner, | ) | C.A. No. 6:16-0600-HMH-KFM |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Leroy Cartledge, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court for review of the Report and Recommendation of United States Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina.[1]  John Douglas Alexander ("Alexander") is a state prisoner seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  In his Report and Recommendation, Magistrate Judge McDonald recommends granting Respondent's motion for summary judgment and dismissing Alexander's motion for default judgment and petition without an evidentiary hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Alexander is currently incarcerated at McCormick Correctional Institution in the South Carolina Department of Corrections.  In November 2006, Alexander was indicted in South

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court.  See Mathews v. Weber, 423 U.S. 261, 270 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

Carolina state court on charges of assault and battery with intent to kill ("ABWIK") and possession of a firearm during the commission of a violent crime. (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 473-74), ECF No. 11-1.) After a jury trial, Alexander was found guilty of both charges on June 14, 2007. (Id. Ex. 1 (App'x 165), ECF No. 11-1.) Alexander was sentenced to life imprisonment without the possibility of parole for ABWIK and five years' imprisonment for the possession of a firearm. (Id. Ex. 1 (App'x 169), ECF No. 11-1.)

On June 18, 2007, Alexander appealed his conviction. (Id. Ex. 2 (Notice of Appeal), ECF No. 11-2.) The South Carolina Court of Appeals affirmed Alexander's conviction in an opinion dated April 29, 2010. (Id. Ex. 1 (App'x 212), ECF No. 11-2.) On May 6, 2010, Alexander filed an application for post-conviction relief ("PCR") raising the following grounds:

1. Ineffective assistance of trial counsel, in that:
   a.  Petitioner was denied his non-waivable Constitutional right to be present at a "critical state" of his criminal trial (Applicant's Grounds A, B);
   b.  Counsel conceded at trial that the evidence did not support a charge on self-defense (Applicant's Ground D);
   c.  Counsel failed to present a meaningful or effective defense at trial (Applicant's Ground I);
   d.  Counsel failed to adequately investigate, prepare for and advise Petitioner of a possible defense based on insanity (Applicant's Grounds H, K);
   e.  Petitioner was denied [the] right to peremptory challenge and strike a juror who after being selected, sworn in and the trial started, was discovered to have been associated with the judge (Applicant's Ground M);
   f.  Counsel failed to object to or request a mistrial when the phrase "malice and malice aforethought" was used forty-two times during closing arguments and the jury charge (Applicant's Ground G);
   g.  Counsel failed to object to the jury instructions (Applicant's Grounds P, R, and S);

2. Trial judge's abuse of discretion, in that:
   a.  Trial judge conspired along with the Solicitor to commit prosecutorial abuse by allowing the term "malice and malice aforethought" forty-two

times during the closing argument and jury charge (Applicant's Ground N);
b.        Jury instruction constituted prejudicial error (Applicant's Ground P);

3. Violation of due process, in that:
a.        Petitioner's Fourth, Fifth, Sixth, and Fourteenth Amendment rights were
          violated (Applicant's Ground E, F); and

4. Prosecutorial misconduct, in that:
a.        Prosecutor gave [a] false impression to Court and jury which involved a
          corruption of the truth seeking function of the trial process (Applicant's
          Ground J); and
b.        Brady violation (Applicant's Grounds C, O).

(R&R 2-4, ECF No. 49 (citing Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 215-45), ECF

No. 11-1).)  An evidentiary hearing was held on December 8, 2011.  (Mem. Supp. Mot. Summ.

J. Ex. 1 (App'x 329), ECF No. 11-1.)  On March 26, 2012, the PCR court denied Alexander's

PCR application.  (Id. Ex. 1 (App'x 463-72), ECF No. 11-1.)  The same day, Alexander filed a

motion to alter or amend the judgment of the order of dismissal, pursuant to Rule 59(e) of the

South Carolina Rules of Civil Procedure.  (Id. Ex. 3 (Pet'r Mot. Alter or Amend J.), ECF

No. 11-3.)  On April 27, 2012, Alexander filed an amended motion to alter or amend the

judgment.  (Id. Ex. 4 (Pet'r Am. Mot. Alter or Amend J.), ECF No. 11-4.)

On or about July 30, 2013, Alexander's case was transferred to the South Carolina Court

of Appeals, pursuant to Rule 243(1) of the South Carolina Appellate Court Rules.  (Id. Ex. 12

(Rule 243 Order), ECF No. 11-12.)  The Court of Appeals denied Alexander's petition for writ

of certiorari in an order dated May 21, 2015.  (Mem. Supp. Mot. Summ. J. Ex. 13 (May 21,

2015 Order), ECF No. 11-13.)  On June 8, 2015, the Court of Appeals issued its remittitur on

the PCR Appeal.  (Id. Ex. 15 (Jun. 8, 2015 Order), ECF No. 11-15.)  Alexander filed a motion

to rescind the remittitur on June 8, 2015.  (Id. Ex. 16 (Pet'r Mot. Rescind Remittitur), ECF

No. 11-16.)  The Court of Appeals recalled the remittitur in an order dated June 25, 2015.

(Id. Ex. 17 (Jun. 25, 2015 Order), ECF No. 11-17.)  On August 20, 2015, the Court of Appeals

denied Alexander' petition for rehearing.  (Mem. Supp. Mot. Summ. J. Ex. 20 (Aug. 20, 2015

Order), ECF No. 11-20.)  The Supreme Court of South Carolina dismissed Alexander's petition

for writ of certiorari in an order dated September 21, 2015.  (Id. Ex. 21 (Sep. 21, 2015 Order),

ECF No. 11-21.)

 Alexander, acting pro se, filed the instant § 2254 petition on February 22, 2016,[2] alleging

ineffective assistance of counsel.  (§ 2254 Pet., generally ECF No. 1.)  On April 21, 2016,[3]

Alexander moved for default judgment.  (Pet'r Mot. Default J., ECF No. 15.)  Respondent

responded on May 12, 2016.  (Resp't Resp. Opp'n Mot. Default J., ECF No. 17.)  On May 19,

2016,[4] Alexander replied.  (Pet'r Reply, ECF No. 24.)

 On April 25, 2016, Respondent moved for summary judgment.  (Resp't Mot. Summ. J.,

ECF No. 12.)  Alexander responded on June 10, 2016.[5]  (Pet'r Resp. Opp'n Mot. Summ. J., ECF

No. 25.)  On June 28, 2016,[6] and July 15, 2016,[7] Alexander filed supplements to his response in

opposition to Respondent's motion for summary judgment.  (Pet'r Supp. Resp. Opp'n Mot.

Summ. J., ECF No. 30; Pet'r 2d Supp. Resp. Opp'n Mot. Summ. J., ECF No. 35.)  On

---

[2] Houston v. Lack, 487 U.S. 266 (1988).

[3] Id.

[4] Id.

[5] Id.

[6] Id.

[7] Houston v. Lack, 487 U.S. 266 (1988).

4

January 13, 2017, Magistrate Judge McDonald issued a Report and Recommendation

recommending granting Respondent's motion for summary judgment and denying Alexander's

petition and motion for default judgment.  (R&R, ECF No. 49.)  After receiving no objections

and after a thorough review of the Report and Recommendation, the court entered an order on

February 1, 2017, adopting the Report and Recommendation.  (Feb. 1, 2017 Order, ECF No.

51).  On February 2, 2017,[8] Alexander filed objections, which the court construed as a motion to

alter or amend the judgment pursuant to Rule 59(e).  (Objs., ECF No. 54.)  The court denied

Alexander's motion to alter or amend the judgment in an order dated February 8, 2016.  On

February 7, 2017,[9] Alexander filed a motion to alter or amend the judgment, which the court

construed as a renewed motion to alter or amend the judgment, or, in the alternative, a motion

for relief from judgment pursuant to Rule 60(b).  (Mot. Alter or Amend J., ECF No. 57.)  The

court granted Alexander's motion to vacate the judgment in an order dated February 14, 2017.

(Feb. 14, 2017 Order, ECF No. 59.)  On February 23, 2017, Respondent replied to Alexander's

objections.  (Resp't Reply Pet'r Objs., ECF No. 61.)  This matter is now ripe for consideration.

## II.  DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the

non-moving party is to be believed and all justifiable inferences must be drawn in his favor.  See

---

[8] Id.

[9] Id.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."  Monahan v. Cty. of Chesterfield, Va., 95 F.3d 1263, 1265 (4th Cir. 1996) (internal quotation marks and citation omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (internal quotation marks and citation omitted).

### B.  Standard of Review in a § 2254 Petition

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254.  Under § 2254(d),

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim - (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, "'a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id. (quoting Williams, 529 U.S. at 410). "Thus, to grant [a petitioner's] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).

### C. Ineffective Assistance of Counsel

In order to successfully challenge a conviction or sentence on the basis of ineffective assistance of counsel, Alexander must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by his counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In order to prove prejudice, Alexander must "show there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine the confidence in the outcome."  Id. at 694.

### D. Objections

Alexander filed objections to the Report and Recommendation.  Objections to the Report and Recommendation must be specific.  Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge.  See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984).  In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation.  See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the court finds that many of Alexander's objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Report and Recommendation, or merely restate his claims.  However, the court was able to glean several specific objections. Alexander objects that the magistrate judge erred in (1) denying his motion for default; (2) failing to consider Alexander's due process and equal protection claims; (3) refusing to consider Alexander's claims arising from errors of state law; and (4) finding that trial counsel was not constitutionally ineffective in failing to (a) object to the trial court's refusal to give a self-defense jury charge, (b) explain his charges and possible defenses, (c) adequately counsel him on the consequences of his failure to testify, (d) ensure that he was present at all critical stages of his trial, (e) object to the solicitor's failure to disclose material evidence, (f) object to the state's harassment of a witness, (g) object to the state's presentation of allegedly perjured

testimony, (h) effectively question witnesses, (i) object to the solicitor's closing arguments, and (j) object to the trial court's jury instructions. (Objs., generally, ECF No. 54.)

### 1. Alexander's Motion for Default Judgment

Alexander objects that the magistrate judge erred in recommending denial of his motion for default judgment. (Id. at 37, ECF No. 54.) Alexander argues that the Respondent failed to file a motion for an extension and its motion for summary judgment was therefore untimely. (Id., ECF No. 54.)

In an order dated March 3, 2016, the magistrate judge ordered Respondent to file its answer to Alexander's § 2254 petition or a responsive pleading within fifty days. (Mar. 3, 2016 Order 2, ECF No. 6.) Therefore, the Respondent's deadline to file a response was April 25, 2016.[10] Respondent filed its motion for summary judgment on April 25, 2016. (Resp't Resp. Opp'n Mot. Default J., ECF No. 17.) Therefore, Respondent's motion was timely and the magistrate judge did not err in recommending dismissal of Alexander's motion for default judgment. As a result, Alexander's objection is without merit.

### 2. Due Process and Equal Protection Claims

Alexander objects that the magistrate judge erred by construing his § 2254 petition to contain only ineffective assistance of counsel claims, rather than claims for ineffective assistance of counsel and violations of his right to due process and equal protection. (Id., ECF No. 54.)

---

[10] The day the magistrate judge's order was entered is not included in the counting. Fed. R. Civ. P. 6(a)(1)(A). Therefore, the fiftieth day to respond was Saturday, April 23, 2016. In accordance with Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure, the deadline was extended until the next day that was not a Saturday, Sunday, or legal holiday, which was Monday, April 25, 2016.

Every ground in Alexander's § 2254 petition argues that his right to due process and equal protection was violated through ineffective assistance of counsel. (<u>E.g.</u>, § 2254 Pet. 35, ECF No. 1-1 ("GROUND ONE: That by and through ineffective assistance of counsel the Petitioner was denied and deprived of due process and equal protection of law under the fifth (5th), sixth (6th) and fourteenth (14th) Amendments of the United States Constitution.").) Moreover, the magistrate judge properly applied the applicable law for ineffective assistance of counsel, which protects against violations of the accused's rights to counsel and due process. See Strickland, 466 U.S. at 684-85 ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause . . . ."). Therefore, the magistrate judge's Report and Recommendation fully analyzed all of Alexander's claims for relief which were fairly presented. As a result, Alexander's objection is without merit.

### 3. Consideration of State Law Issues

Alexander objects that the magistrate judge erred by refusing to consider Alexander's claims which allege errors of state law. (Objs. 31-33, ECF No. 54.) Alexander argues that the magistrate judge should have fully considered Alexander's claims that the indictment did not provide adequate notice of the charges he faced, and the trial court erred by refusing to grant a self-defense jury charge. (<u>Id.</u>, ECF No. 54.) Alexander argues these claims were proper because they arise from clear errors of both state and federal law. (<u>Id.</u> at 32, ECF No. 54 (citing <u>United States v. Goetz</u>, 746 F.2d 705, 708 (11th Cir. 1984); <u>State v. Lee-Grigg</u>, 649 S.E.2d 41, 49 (S.C. Ct. App. 2007).)

10

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Alexander "cannot repackage . . . state law issue[s] into a federal one by citing the due process clause." Missouri v. Beckwith, Civil Action No. 9:08-2878-SB, 2009 WL 3233521, at *5 (D.S.C. Sept. 29, 2009) (unpublished). Errors in state court indictments are matters of state law which are not subject to federal habeas review. Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998). Similarly, "questions of jury instructions are matters of state law, not cognizable on federal review, unless a specific constitutional issue is implicated that calls into question the Due Process Clause." Grandison v. Corcoran, 78 F. Supp. 2d 499, 507 (D. Md. 2000).

In the instant case, the South Carolina Court of Appeals reviewed Alexander's pro se petition for writ of certiorari, considered the record, and found no error meriting appeal. (Mem. Supp. Mot. Summ. J. Ex. 13 (May 21, 2015 Order), ECF No. 11-13.) As a result, this court is bound by the state court's construction of South Carolina law, which is presumed correct unless the petitioner rebuts that presumption by clear and convincing evidence. § 2254(e)(1). Further, this court cannot grant relief based upon the state court's factual findings unless they are objectively unreasonable. § 2254(d)(2).

Upon review, Alexander has failed to show that the due process clause is implicated by the state court's decision, and does not provide clear and convincing evidence that the state court's findings were in error. Therefore, the magistrate judge did not err in refusing to consider

11

Alexander's claims for relief based upon errors of state law.  As a result, Alexander's objection is without merit.

### 4. Ineffective Assistance of Counsel

#### a. Failure to Effectively Raise Self-Defense Theory

Alexander objects that the magistrate judge erred in finding that the PCR court's determination that trial counsel was not ineffective for conceding Alexander's claim of self-defense and failing to object to the trial court's refusal to charge the jury on self-defense was not unreasonable or contrary to existing law.  (Objs. 4-9, ECF No. 54.)  Alexander argues that, because trial counsel testified during the PCR hearing that "[o]ut of an abundance of caution I might have [objected to the court's refusal to give a self-defense charge]," the PCR court's decision that trial counsel was not ineffective was an unreasonable application of law. (Id. at 3-8, ECF No. 54 (quoting Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 420), ECF No. 11-1).)  Further, Alexander argues that the PCR court's decision that even had trial counsel objected, Alexander was not entitled to a jury charge on self-defense, is contrary to existing law. (Id. at 6-8, ECF No. 54.)

The PCR court specifically addressed Alexander's arguments and found that trial counsel's decision not to pursue a self-defense charge was based upon sound trial strategy and that counsel was not ineffective.  (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 469-70), ECF No. 11-1.)  Specifically, the PCR court found:

> Applicant . . . alleged that Counsel was ineffective when he conceded that a self-defense jury charge was not proper.  Applicant testified that this was the only defense that was ever discussed between himself and counsel, never the lesser-included charge.

12

\*\*\*

This Court finds that the Applicant has failed to meet his burden of proof. Counsel testified that although that was discussed as a potential defense, when the Applicant's sister testified, as the only eyewitness to the events, he did not feel that the testimony presented supported a self-defense charge. A defendant is entitled to a self-defense charge where the evidence shows that (1) he was without fault in bringing on the difficulty, (2) he actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, (3) a reasonably prudent person of ordinary firmness and courage would have entertained the same belief, and (4) he had no other probable means of avoiding the danger other than to act as he did. State v. Sullivan, 345 S.C. 169, 547 S.E.2d 183 (2001); State v. [Addison], 338 S.C. 277, 525 S.E.2d 901 (2000).

Counsel testified that the sister's testimony did not support the fact that the victim was armed or that it was necessary for the Applicant to shoot the victim to stop the victim from hurting him or his sister. . . . Additionally, Counsel testified that he thought that the sister would be a strong witness for the defense who could help them reach the threshold of the requirement of evidence of imminent danger for bodily injury to the Applicant or sister. However, Counsel testified that the sister did not testify as she had indicated during previous conversations and he had to shift strategy for closing and focus on the lack of intent.

\*\*\*

This Court finds that the Applicant has failed to meet his burden of proof as to this claim. The facts must support a jury instruction for it to be proper. State v. Crosby, 355 S.C. 47, 584 S.E.2d 110 (2003) . . . . Furthermore, the facts presented at trial through testimony did not support the charge of self-defense. Counsel is an experienced trial attorney who has prepared and presented many criminal cases which focused on self-defense and he is well-aware of the elements that must be met for a jury charge of self-defense to be considered. Even if this Court were to find that Counsel was deficient for conceding to no self-defense charge, prejudice cannot be established. It is clear that the trial judge did not feel that the Applicant had met the threshold for the charge and would not have allowed the charge even if Counsel had not conceded the issue.

(Id. Ex. 1 (App'x 469-70), ECF No. 11-1.) Furthermore, the PCR court found trial counsel's

testimony credible. (Id. Ex. 1 (App'x 471C), ECF No. 11-1.)

"Standing alone, unsuccessful trial tactics neither constitute prejudice nor definitively prove ineffective assistance of counsel." Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995). "For a lawyer's trial performance to be deficient, his errors must have been so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (internal citations and quotation marks omitted). In order to successfully challenge the PCR court's credibility determination, Alexander must demonstrate a stark and clear error. Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008). "[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Id. Mere disagreement with a state court's credibility determination is not enough; rather, the federal court must determine that the state court's determination was wrong and "unreasonable in light of the evidence presented." Merzbacher v. Shearin, 706 F.3d 356, 367 (4th Cir. 2013).

In the instant case, Alexander has failed to demonstrate that the PCR court erred in finding trial counsel credible. The record supports the PCR court's conclusion. During the PCR hearing, trial counsel testified that Alexander's case "did not even get close to the threshold [of self-defense] based on the testimony." (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 403), ECF No. 11-1.) Trial counsel based his testimony on his experience with self-defense cases and because there was no evidence of imminent threat. (Id. Ex. 1 (App'x 403, 411, 419), ECF No. 11-1.) Further, Alexander has failed to demonstrate that trial counsel's decision not to pursue a defense of self-defense was ineffective assistance. Therefore, the magistrate judge did not err in finding that the PCR court's decision was not contrary to or an unreasonable application of existing law. As a result, Alexander's objection is without merit.

14

**b. Failure to Explain Charges and Possible Defenses**

Alexander objects that the magistrate judge erred in finding that the PCR court's determination that trial counsel was not ineffective with respect to the claim that counsel failed to explain the charges Alexander faced and the elements of self-defense was not an unreasonable application of or contrary to existing law.  (Objs. 9-11, ECF No. 54.)  Alexander argues that trial counsel's explanation of the elements of ABWIK and self-defense in "layman's terms" failed to provide sufficient legal detail for Alexander to understand the nature of the charges against him, assist in his own defense, or knowingly agree to a course of action.  (Id. at 10-11, ECF No. 54.)  As a result, Alexander argues that the PCR court erred in finding credible trial counsel's testimony that he believed Alexander understood the elements of ABWIK and self-defense.  (Id. at 11, ECF No. 54.)

During the PCR hearing, Alexander testified that trial counsel did not explain the elements of ABWIK, assault and battery of a high and aggravated nature ("ABHAN"), self-defense, or defense of another.  (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 337), ECF No. 11-1.)  However, the PCR court did not find Alexander's testimony credible.  (Id. Ex. 1 (App'x 471C), ECF No. 11-1.)  In contrast, the PCR court found trial counsel's testimony about how he prepares for trial and the manner in which he explains the charges and defenses to his clients "very credible."  (Id. Ex. 1 (App'x 467), ECF No. 11-1.)  Furthermore, the PCR court found that trial counsel was "fully prepared for trial" and was not ineffective.  (Id. Ex. 1 (App'x 467-68), ECF No. 11-1.)

Nothing in the record demonstrates that the PCR court made a stark and clear error in regard to its credibility determinations.  Cagle, 520 F.3d at 324.  Further, Alexander has failed to

15

demonstrate that trial counsel's explanations were so inadequate as to result in ineffective

assistance. Therefore, the magistrate judge did not err in finding that the PCR court's decision

was not an unreasonable application of or contrary to existing law. As a result, Alexander's

objection is without merit.

### c. Failing to Counsel on Consequences of Failing to Testify

Alexander objects that the magistrate judge erred in finding that the PCR court did not

err in determining that trial counsel adequately explained to Alexander the consequences of his

failure to testify. (Objs. 14-16, ECF No. 54.) Alexander argues that, at the close of evidence,

trial counsel did not inform him that if he failed to testify, he would not be able to present a

defense of self-defense to the jury. (Id. at 16, ECF No. 54.) Instead, Alexander alleges that trial

counsel affirmatively denied Alexander an opportunity to testify by immediately moving to

closing arguments. (Id., ECF No. 54.)

The PCR court analyzed Alexander's claim under the standard set forth in Strickland and

found that counsel was not ineffective. (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 470), ECF

No. 11-1.) Further, the PCR court found that

> Applicant alleged that Counsel failed to define his right to testify as to the facts
> to help establish the self-defense claim.
>
> ***
>
> Counsel testified that he discussed the pros and cons of the Applicant testifying
> at trial with Applicant, but recommended that Applicant not testify because of the
> fact his previous conviction for voluntary manslaughter would be able to be used
> against him. Although Counsel testified that he advised Applicant that it was his
> decision.
>
> ***

This Court finds that the Applicant has failed to meet his burden of proof as to this claim.

(Id. Ex. 1 (App'x 469-70), ECF No. 11-1.)  Alexander has failed to provide sufficient evidence that trial counsel's explanation of the consequences of testifying or failing to testify was the result of ineffective assistance.  Furthermore, the trial court counseled Alexander on the consequences of his failure to testify:

> THE COURT:  Mr. Boggs, I want you to give – I want to give you an opportunity to talk with your client about, again about, whether or not he will testify.
>
> Do you have – you don't have any other witnesses besides the defendant if we were to testify?
>
> MR. BOGGS:  No, sir.
>
> THE COURT:  Based upon what I've heard, I'm not inclined to instruct the jury on self-defense or defense of another.  And I'll be happy to go through those reasons if you want to hear them.  But if that changes your strategy about whether or not, or it changes Mr. Alexander's mind about whether or not, he will testify in this case, I want you to have that opportunity to discuss it with him.
>
> ***
>
> THE COURT:  Okay.  And, Mr. Alexander, I'm not asking you what you would testify to, because you don't have to tell me.  No reason for that.
>
> But you understand that in order for the jury to be able to consider the defense of self-defense or defense of another, in this case your sister, that there has got to be certain evidence presented for the jury to be able to consider that type of a defense.
>
> Mr. Bogg has stated that he recognizes that, or at least in his view, there is not sufficient evidence to put up in order to establish that defense.  But you and he have discussed it.  Are you satisfied that you don't have that evidence?
>
> THE DEFENDANT:  Yes, sir.

(Id. Ex. 1 (App'x 113-16), ECF No. 11-1.) Consequently, even if trial counsel's explanation of the consequences of Alexander's failure to testify were insufficient, Alexander suffered no prejudice because the trial court directly explained the consequences of his failure to testify. Therefore, the magistrate judge did not err in finding the PCR court's decision was not contrary to or an unreasonable application of existing law. As a result, Alexander's objection is without merit.

### d. Failure to Ensure Alexander Present at In-Chambers Meeting

Alexander objects that the magistrate judge erred in finding that the PCR court's decision that trial counsel was not ineffective for failing to inform Alexander about a "secret in-chambers meeting" was not an unreasonable application of or contrary to existing law. (Objs. 11-14, ECF No. 54.) Alexander argues that, immediately after the jury was impaneled, trial counsel, the trial court, and the solicitor engaged in an in-chambers meeting wherein the trial court informed trial counsel that the court would not give a self-defense charge. (Id. at 11-12, ECF No. 54.) Based upon the meeting, Alexander alleges that trial counsel secretly decided not to pursue a trial strategy based on self-defense. (Id., ECF No. 54.) Alexander alleges that trial counsel never informed him about the content and, as a result, Alexander was unable to discern the need to testify. (Id. at 13-14, ECF No. 54.)

In regards to the "secret in-chambers meeting," the PCR court found that

[t]he Applicant also alleged that Counsel was ineffective for failing to ensure that the Applicant was present at all critical stages of his trial. During testimony, the Applicant referenced an in chambers meeting that Counsel had with the Assistant Solicitor and the judge regarding the jury charges in his case. Based on the testimony presented, this Court interprets Applicant's claim that Counsel should have ensured that the Applicant was present for all conversations regarding his case, in particular the conversations regarding the possible jury charge for self-

18

> defense. Counsel acknowledged that he went into chambers with the trial judge and opposing counsel to discuss the requested jury charges, but testified that is standard procedure since it involves a discussion of the law and is not done in the presence of the jury. This Court finds that this allegation lacks merit. A review of the record indicates that the Applicant was present at all times during his trial before the jury. However, no Constitutional right was violated when Counsel met with opposing counsel and the judge to discuss the legal charges of the case. This Court finds no violation of the Applicant's right and no deficient performance on Counsel's behalf. Therefore, this claim is denied and dismissed.

(Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 471), ECF No. 11-1.)

"[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987). As previously discussed, the trial court counseled Alexander on the consequences of his failure to testify. (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 113-16), ECF No. 11-1.) Despite the trial court's warnings that it would not give a self-defense jury instruction if Alexander did not testify, Alexander declined to do so. (Id. Ex. 1 (App'x 116), ECF No. 11-1.) Consequently, Alexander's assertion that his presence at the in-chambers meeting would have informed him of the need to testify is without merit. Therefore, the magistrate judge did not err in finding the PCR court's decision was not an unreasonable application of or contrary to existing law. As a result, Alexander's objection is without merit.

### e. Failure to Ensure Alexander Present for Supplemental Jury Charge

Alexander objects that the magistrate judge erred in finding that the PCR court's determination that Alexander was present for all critical stages of the trial was contrary to or an unreasonable application of existing law. (Objs. 26-27, ECF No. 54.) Alexander argues that he was not present for a supplemental jury charge, wherein he alleges that the trial court gave the

jury additional instructions about the definition of malice.  (<u>Id.</u>, ECF No. 54.)  Because he was not present for this instruction, Alexander argues that he was denied the right to object to the supplemental jury charge and preserve the issue for appellate review.  (<u>Id.</u> at 27, ECF No. 54.)

In support of his allegation, Alexander testified during the PCR hearing that, after evidence was provided to the jury for consideration, he was brought back into the courtroom in regard to a jury question about malice.  (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 371), ECF No. 11-1.)  Alexander stated that he remained in the courtroom for ten minutes and then was escorted back to his holding cell without the jury's question or the court's supplemental instruction being placed on the record.  (<u>Id.</u> Ex. 1 (App'x 371), ECF No. 11-1.)  Alexander argues that his accounting of events is supported by the PCR court's decision, which stated, "the number of times Applicant indicates the word 'malice' was used includes both the jury charge and supplemental charge," in reference to Alexander's argument that the trial court's numerous uses of "malice" was confusing.  (<u>Id.</u> Ex. 1 (App'x 467), ECF No. 11-1.)  However, the PCR court found that Alexander "was present at all times during his trial before the jury." (<u>Id.</u> Ex. 1 (App'x 470), ECF No. 11-1.)

The state court's resolution of facts is entitled to a presumption of correctness, unless Alexander can show by clear and convincing evidence that the state court erred.  § 2254(e)(1). Upon review, nothing in the trial transcript demonstrates a supplemental jury instruction was requested or given.  The only evidence in the record demonstrates that after the evidence was provided to the jury, the next event was the jury returning with a verdict.  (<u>Id.</u> Ex. 1 (App'x 164), ECF No. 11-1.)  Therefore, the magistrate judge did not err in finding that the PCR

court's decision was not contrary to or an unreasonable application of existing law. As a result, Alexander's objection is without merit.

**f. Failure to Object to or Raise Solicitor's Failure to Disclose Material Evidence**

Alexander objects that the magistrate judge erred in finding that the PCR court's decision that trial counsel was not ineffective for failing to object to the solicitor's withholding of exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), was not an unreasonable application of or contrary to existing law. (Objs. 22-23, ECF No. 54.) Alexander argues that the solicitor failed to turn over a 911 audio tape which Alexander alleges was material and favorable to his self-defense theory. (Id. at 22, ECF No. 54.) Further, Alexander argues that, as a result, he was unable to object to the solicitor's materially false assertions about the contents of the audio tape. (Id., ECF No. 54.)

"A _Brady_ violation occurs when the government fails to disclose evidence materially favorable to the accused." Youngblood v. West Virginia, 547 U.S. 867, 869 (2006) (per curiam). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 870 (internal quotation marks omitted). "An individual asserting a _Brady_ violation must demonstrate that evidence: (1) favorable to the accused; (2) in the possession of or known by the prosecution; (3) was suppressed by the State; and (4) was material to the accused's guilt or innocence or was impeaching." Riddle v. Ozmint, 631 S.E.2d 70, 73 (S.C. 2006) (citing Kyles v. Whitley, 514 U.S. 419 (1995)). Evidence is material if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Strickler v. Green, 527 U.S. 263, 290 (1999).

21

The PCR court applied the standard set forth in <u>Strickland</u> and found that trial counsel was not ineffective. (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 466-67), ECF No. 54.) Additionally, the PCR court found that Alexander had "failed to produce any testimony or evidence in support" of his allegation of prosecutorial misconduct. (<u>Id.</u> Ex. 1 (App'x 471A-B), ECF No. 54.) Furthermore, the PCR court's finding is supported by the record.

The trial transcript demonstrates that trial counsel was aware of the substance of the 911 audio tape. During his opening statements, trial counsel stated that "the testimony is going to show that [Alexander] immediately called 9-1-1 and said [']get over here, a man has been shot.['] 9-1-1, you will hear the tapes, ask [']what's going on?[']" (<u>Id.</u> Ex. 1 (App'x 39), ECF No. 54.) Similarly, during trial counsel's cross-examination of the victim, trial counsel asked:

TRIAL COUNSEL:  Okay.  And [Alexander] called 9-1-1, correct?

FREEMAN:  Correct.

TRIAL COUNSEL:  And you heard him talking to 9-1-1, correct?

FREEMAN:  Correct.

TRIAL COUNSEL:  And he was pretty frantic at that point, wasn't he?

FREEMAN:  I don't understand.

TRIAL COUNSEL:  Okay.  Well, he was really excited and he was yelling at 9-1-1 to get somebody over there, that you had been shot.

FREEMAN:  Correct.

***

TRIAL COUNSEL:  All right.  You don't doubt that he was administering first aid and calling for an ambulance to come and assist you.

FREEMAN:  No.

22

***

TRIAL COUNSEL:  And you actually talked to 9-1-1 very briefly yourself, right?

FREEMAN:  Yes, sir.

TRIAL COUNSEL:  [Alexander] gave you the phone to speak to 9-1-1, right?

FREEMAN:  Yes, sir.

(Id. Ex. 1 (App'x 58L-M), ECF No. 54.)  As a result, the trial transcript shows that trial counsel was aware of the contents of the 911 audio tape.  Further, trial counsel's statements about the contents of the 911 audio tape were not contradicted by the solicitor.  For instance, during the solicitor's direct examination of the victim, she asked:

SOLICITOR:  Okay. Who called 9-1-1?

FREEMAN:  [Alexander] did. [Alexander].

***

SOLICITOR:  When you first spoke to 9-1-1 and the first officers on the scene, what did you tell them?

FREEMAN:  Well, I told them.  Well, they asked me . . . who shot me.  I told them I didn't know at the time.

SOLICITOR:  Okay.  Why did you say this?

FREEMAN:  Because I was scared because [Alexander] was still there.

(Id. Ex. 1 (App'x 56-57), ECF No. 54.)  Further, Alexander has failed to put forward any testimony or evidence that demonstrates that the 911 audio tape was not disclosed.

Additionally, Alexander cannot show that prejudice ensued.  The testimony regarding the contents of the 911 audio tape does not support his theory of self-defense, nor does

23

Alexander allege that the recording would have demonstrated that the victim attacked him. Therefore, the magistrate judge did not err in finding that the PCR court's decision was not contrary to or an unreasonable application of existing law.  As a result, Alexander's objection is without merit.

### g. Failure to Raise or Object to State's Harassment of a Witness

Alexander objects that the magistrate judge erred in finding that the PCR court's decision that trial counsel was not ineffective for failing to object to or raise the issue of the solicitor's misconduct with respect to a witness, April Alexander ("April"), was not an unreasonable application of or contrary to existing law.  (Objs. 22-25, ECF No. 54.)

The PCR court properly analyzed trial counsel's performance under the standard set forth in Strickland and found that trial counsel was not ineffective.  (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 466-67), ECF No. 11-1.)  Additionally, the PCR court found that Alexander failed to  meet his burden of proof in regard to his claim that the solicitor harassed April.  (Id. Ex. 1 (App'x 471A-B), ECF No. 11-1.)

In the instant case, Alexander submits no evidence that demonstrates by clear and convincing evidence that the solicitor harassed April.  Instead, Alexander relies upon his conclusory allegations that harassment occurred.  (See Objs. 23-24, ECF No. 54.)  Therefore, the magistrate judge did not err in finding that the PCR court's decision was not an unreasonable application of or contrary to existing law.  As a result, Alexander's objection is without merit.

### h. Failure to Object to State's Presentation of Allegedly Perjured Testimony

Alexander objects that the magistrate judge erred in finding that the PCR court's decision that trial counsel was not ineffective for failing to object to the solicitor eliciting allegedly perjured testimony was not an unreasonable application of or contrary to existing law. (Objs. 22-25, ECF No. 54.)  Alexander argues that April's testimony was false and the solicitor was aware of its falsity because it contradicted a prior sworn statement provided immediately after the victim was shot.  (Id. at 24-25, ECF No. 54 (citing Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 277, 295, 436), ECF No. 11-1).)  As a result of the allegedly perjured testimony, Alexander argues he was unable to prove his self-defense theory.  (Id. at 22-25, ECF No. 54.)

In order to prevail on this claim, Alexander must prove:  "(1) the testimony was false; (2) the Government knew the testimony was false; and (3) there is a reasonable probability that the false testimony could have affected the verdict."  United States v. Roane, 378 F.3d 382, 400 (4th Cir. 2004) (internal quotation marks and citations omitted).  "[A] challenge to evidence through another witness or prior inconsistent statements [is] insufficient to establish prosecutorial use of false testimony."  United States v. Martin, 59 F.3d 767, 770 (8th Cir. 1995) (quoting United States v. White, 724 F.2d 714, 717 (8th Cir. 1984) (per curiam)).  "[C]onclusory accusations that the Government should have known that a statement was false, without more, do not warrant an evidentiary hearing or offer escape from summary judgment."  Roane, 378 F.3d at 401.

The PCR court analyzed trial counsel's performance under the standard set forth in Strickland and found that trial counsel was not ineffective.  (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 466-67), ECF No. 11-1.)  Furthermore, the PCR court's conclusions are supported by

25

the record.  The trial transcript demonstrates that April's prior statements were used by the

solicitor to impeach April and do not show that the testimony the solicitor elicited was false.

For example, in regard to the direction Alexander pointed a gun, the solicitor elicited the

following testimony:

> SOLICITOR:  Okay. And I know Mr. Boggs has showed you your previous statement before, and I'm going to give a copy back to you for a second.
>
> I would like for you to review that statement for me and tell me where in there you told the officers the day this happened that your brother was pointing to the floor.
>
> APRIL:  You want me to point it out in this statement?
>
> SOLICITOR:  Yes ma'am.
>
> APRIL:  It doesn't say he pointed to the floor.
>
> SOLICITOR:  It actually says John pulled out a gun and waved it and pointed it and shot him.  Isn't that what it really says?
>
> APRIL:  That's what it says.
>
> SOLICITOR:  So the night this happened you gave a statement to Officer Gary. . . .
>
> ***
>
> SOLICITOR:  Okay.  But you didn't mention anything about him shooting at the floor.
>
> APRIL:  No.  But I actually thought that he shot to the floor because that's where it appeared.
>
> SOLICITOR:  But that statement is in your handwriting.
>
> APRIL:  Yes, ma'am.
>
> SOLICITOR:  And you were allowed to write whatever you wanted to write.

26

APRIL:  Yes, ma'am.  And I was also very upset at the time.

SOLICITOR:  But you don't recall, you didn't tell the officer he was shooting at the floor.  You said he took the gun out and pointed it and shot.

APRIL:  Yes.  But I was also very upset at the time.

SOLICITOR:  But within a few hours of your boyfriend getting shot, that's your statement.

APRIL:  Yes.

(Id. Ex. 1 (App'x 104-05), ECF No. 11-1.)  As the record demonstrates, the solicitor's questions focused on impeaching April with her prior inconsistent statements, rather than eliciting new testimony which was inconsistent with a prior sworn statement.  Moreover, Alexander presents no evidence which demonstrates that the testimony was false or that the solicitor was aware of its falsity.  Therefore, the magistrate judge did not err in finding that the PCR court's decision was not contrary to or an unreasonable application of existing law.  As a result, Alexander's objection is without merit.

### i. Failure to Effectively Question Witnesses

Alexander objects that the magistrate judge erred in finding that the PCR court's decision that trial counsel was not ineffective for failing to admit April's prior statement was not contrary to or an unreasonable application of existing law.  (Objs. 27-28, ECF No. 54.) Alexander argues that April's prior statement to the police, discussed above, supported his self-defense theory and, therefore, trial counsel was ineffective for failing to move to admit the statement.  (Id., ECF No. 54.)  Alexander argues that the statement would not have been cumulative because the jury never heard this version of events and, therefore, no reasonable attorney would have failed to attempt to admit the statement.  (Id., ECF No. 54).

The PCR court analyzed trial counsel's performance under the standard set forth in Strickland and found that trial counsel was not ineffective.  (Mem. Supp. Mot. Summ.J. Ex. 1 (App'x 467-68), ECF No. 11-1.)  Furthermore, the PCR court's decision is supported by the record.

Trial counsel questioned April about the prior statement during his direct examination and used it to refresh her memory on several occasions.  (Id. Ex. 1 (App'x 96-98), ECF No. 11-1.)  Based upon her refreshed memory, April testified that Alexander and the victim were arguing, the victim aggressively approached Alexander, and then she saw Alexander fire his gun at the floor.  (Id. Ex. 1 (App'x 97-101), ECF No. 11-1.)  Further, trial counsel attempted to admit April's prior statement.  (Id. Ex. 1 (App'x 98), ECF No. 11-1.)  As trial counsel attempted to admit the voluntary statement and elicited testimony which was virtually identical to the statement, the magistrate judge did not err in finding that the PCR court's decision was not contrary to or an unreasonable application of existing law.  As a result, Alexander's objection is without merit.

### j. Failure to Object to Solicitor's Comparisons During Closing Arguments

Alexander objects that the magistrate judge erred in finding that the PCR court's decision that trial counsel was not ineffective for failing to object to the solicitor's use of a "bank robber" analogy was not contrary to or an unreasonable application of existing law. (Objs. 22-23, ECF No. 54.)  Alexander argues that the solicitor's comparison of Alexander to a recalcitrant bank robber undermined the confidence in the verdict.  (Id., ECF No. 54.)

"[The Fourth Circuit] has a two-pronged test for determining whether a prosecutor's misconduct in closing argument so infected the trial with unfairness as to make the resulting

28

conviction a denial of due process." United States v. Wilson, 135 F.3d 291, 297 (4th Cir. 1998)

(quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)) (internal quotation marks omitted).

To prevail, Alexander must show that (1) "the [solicitor's] remarks were improper" and (2) the

remarks "prejudicially affected [his] substantial rights so as to deprive [him] of a fair trial." Id.

Factors the court should consider include:

> (1) the degree to which the [solicitor's] remarks had a tendency to mislead the
> jury and to prejudice the accused; (2) whether the remarks were isolated or
> extensive; (3) absent the remarks, the strength of competent proof introduced to
> establish the guilt of the accused; (4) whether the comments were deliberately
> placed before the jury to divert attention to extraneous matters; (5) whether the
> [solicitor]'s remarks were invited by improper conduct of defense counsel; and
> (6) whether curative instructions were given to the jury.  These factors are
> examined in the context of the entire trial, and no one factor is dispositive.

United States v. Lightly, 616 F.3d 321, 361 (4th Cir. 2010) (internal quotation marks and

citations omitted).

> In the instant case, during her closing statements, the solicitor stated:

> Mr. Boggs wants to make a big deal about the fact that after the fact the victim
> did offer aid, I'm sorry, the defendant did offer aid to the victim, that he helped
> him, he called the police, he was doing what he could at that point in time to help
> him.

> But [l]ets go back and look.  He shot him.  It's kind of like if I were to go into a
> bank, rob the bank and walk out with the money and get half way down the street
> and go ["]I made a bad choice, I'm going to take this money back and we're just
> going to forget about it.["]  My actions afterwards do not negate what I did when
> I walked into the bank and took the money, just like in this case it doesn't negate
> that he shot Mr. Freeman just because afterwards he decided to help.

(Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 135), ECF No. 11-1.)  Based upon the record, the

PCR court found:

> The Applicant . . . testified that Counsel was ineffective for failing to object to
> various improper comments and arguments made by the Solicitor during the trial.

> Although PCR counsel pointed to arguments and comments which might be
> somewhat confusing and improper (violence v. violence and bank robber), the
> Applicant failed to meet his burden of proof in showing that Counsel was
> deficient in failing to object to those comments.  This Court also finds that even
> if Counsel was deficient for failing to object to these comments, the Applicant
> failed to demonstrate that he was prejudiced by these statements made by the
> Solicitor and that the objections would have been sustained or the outcome of the
> trial would have been any different.

(Id. Ex. 1 (App'x 466), ECF No. 11-1.)  In the instant case, the solicitor's comments were a

rebuttal of trial counsel's arguments.  During his closing, trial counsel stated that,

> [i]f your intent is to kill them . . . I'm going to shoot him until he's dead.
>
> You certainly don't call the police and the ambulance.  You don't dial 9-1-1 and
> say send somebody here. . . . And you certainly don't administer first aid to a
> person if your intent is to kill him.  No.  Common sense tells you that the actions
> of John Alexander were such that there was no intent.

(Id. Ex. 1 (App'x 132), ECF No. 11-1.)  Further, the remarks were not misleading.  Instead, the

solicitor's analogy illustrates that Alexander's later actions do not negate his earlier actions.

The remarks were isolated and there is no evidence that the solicitor intended the remarks to

mislead or divert their attention from the evidence of the trial.  Instead, the solicitor largely

focused her closing arguments on the evidence against Alexander and the elements of the crimes

with which Alexander was charged.  (See id. Ex. 1 (App'x 145-62), ECF No. 11-1.)  Because

the solicitor focused on the evidence before the jury, the brevity of the solicitor's statements,

and the clarity of the analogy used, the solicitor's remarks were not so prejudicial as to deprive

Alexander of a fair trial.  Therefore, the magistrate judge did not err in finding that the PCR

court's decision was not contrary to or an unreasonable application of existing law.  As a result,

Alexander's objection is without merit.

### k. Failure to Object to Solicitor's Statements About Victim's Injuries

Alexander objects that the magistrate judge erred in finding that trial counsel was not ineffective for failing to object to the solicitor's inaccurate statements regarding the victim's injuries.[11]  (Objs. 29-31, ECF No. 54.)  Alexander argues that the solicitor inaccurately referred to the victim's injuries as "life threatening" during her questioning of an expert witness, Dr. Vidal Patel ("Dr. Patel"), and closing arguments.  (Id., ECF No. 54.)  Further, Alexander argues that the solicitor inaccurately stated during closing arguments that the victim was shot in the stomach, rather than the pelvis.  (Id., ECF No. 54.)  In support of his argument, Alexander provides one page of the victim's discharge summary, which described the victim as being "hemodynamically stable" at the time he was brought to the hospital and that the victim suffered a gunshot wound to the pelvis.  (Id. Ex. 1 (Discharge Summary), ECF No. 54-1.)  Therefore, Alexander argues that trial counsel was ineffective for failing to present evidence to contradict the solicitor's assertion or object to the solicitor's inaccurate statements.  (Id. at 30-31, ECF No. 54.)

During Alexander's trial, Dr. Patel, a doctor at Spartanburg Regional Hospital who treated the victim's gunshot wound, testified that:

> [The victim] was brought in as a code trauma for the gunshot wound to the left of his abdomen, and apparently upon his arrival I saw that he had pantreen (sic) trauma on the left side of his abdomen transversing into his pelvis.  On x-ray the bullet was in his pelvis, and I was concerned about him having received injuries to his rectum, bladder and other vascular injuries.
>
> ***

---

[11] The magistrate judge found that, although Alexander did not raise this issue on PCR, he is not procedurally barred from seeking habeas review on this claim.  (R&R 51, ECF No. 49.)

> At this point we took him to the operating room just for his concern of having life-threatening injuries.  And we explored his abdomen and found that he had a rectal injury, and also we cannot rule out at this point internal injury.  So we had to do an ostomy [sic] on him, which is basically having a part of the colon brought out on the left side of his abdomen.  And this is considered an emergency situation to take this patient to the operating room, because sometimes they are stable.  But if you do an exmed [sic] or so they might die on you.

(Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 80), ECF No. 11-1.)  Additionally, Dr. Patel agreed that the victim's injuries were life threatening at the time he arrived at the hospital.  (Id. Ex. 1 (App'x 80), ECF No. 11-1.)

> During her closing arguments, the solicitor stated:

> Ladies and gentlemen, this is a gunshot wound that required, required immediate surgery when he got to Spartanburg Regional to explore and see all the damage that it had done.  This was enough of a serious injury that it left a bullet in this man's hip that he will have there the rest of his life.  This is an injury that required almost two weeks of hospitalization in addition to months longer of treatment for this injury.  It's not just a he-was-winged-in-the-side.  He was shot. It was a violent injury.

> ***

> I think the last two things that go together, pointed and shot an unarmed man, shot him in the stomach.  They want to make you believe just because he shot him in the stomach that it's, you know, just a little, a little nothing, little wing, nothing like that.  He shot the man in the stomach right here.

(Id. Ex. 1 (App'x 138, 143-33), ECF No. 11-1.)

> Upon review, trial counsel was not ineffective for failing to object to the solicitor's comments.  The solicitor's comments regarding the seriousness of the victim's injuries are supported by Dr. Patel's testimony and were not improper.  To the extent that the solicitor's comments about the victim being shot in the stomach rather than the pelvis could be misleading, Alexander has failed to demonstrate that he has suffered prejudice.  Further, trial counsel was

not ineffective for failing to cross-examine Dr. Patel about the seriousness of the victim's injuries. Alexander has failed to present evidence which contradicts Dr. Patel's testimony or demonstrates that the victim's injuries were not life-threatening. As a result, Alexander's objection is without merit.

### l. Failure to Object to Solicitor's Comments Regarding ABHAN

Alexander objects that the magistrate judge erred in finding the PCR court's decision that trial counsel was not ineffective for failing to object to the solicitor's statement that ABHAN was not a crime of violence and the trial court's jury instructions regarding ABHAN was not an unreasonable application of or contrary to existing law. (Objs. 16-22, ECF No. 54 (citing United States v. Johnson, No. 12-4549, 2013 WL 440999, at *1 (4th Cir. Feb. 6, 2013) (per curiam) (unpublished).) As a result, Alexander argues that the jury charge was inappropriate because he argues that it precluded the jury from finding him guilty of the lesser-included ABHAN charge, unless the jury found his actions were not violent. (Id. at 16-17, ECF No. 54.)

> During her closing, the solicitor gave the following statement in regard to ABHAN:
>
> You also will have an additional charge to consider in this case. That's possession of a weapon during the commission of a crime of violence or violent crime. I'll tell you that in our state we qualify assault and battery with intent to kill as a crime of violence. The lesser included charge, which you can consider only after you decide its not ABWIK, is not considered a crime of violence in our state.

(Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 141-42), ECF No. 11-1.) At the time of Alexander's trial, South Carolina law did not treat ABHAN as a crime of violence. Compare S.C. Code Ann. § 16-1-60 (2015), with S.C. Code Ann. § 16-1-60 (2007) and 2006 S.C. Act No. 379.

33

Further, the PCR court found that "even if Counsel was deficient for failing to object to these comments, the Applicant failed to demonstrate that he was prejudiced by these statements made by the Solicitor and that the objections would have been sustained or the outcome of the trial would have been any different." (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 466-67), ECF No. 11-1.) The record supports the PCR court's conclusion. During the jury charge, the trial court stated:

> Now, where a person is charged with the greater offense of assault and battery with intent to kill, he may be found guilty of only the lesser included offense of assault and battery of a high and aggravated nature if you 12 jurors determine that the evidence warrants such a finding.
>
> An assault and battery of a high and aggravated nature is an assault and battery . . . which is accompanied by some circumstances of aggravation. A circumstance of aggravation is some fact or incident or detail or circumstance which accompanies an assault and battery that tends to enhance or to increase the severity of the assault and battery.
>
> Some examples of facts which might be considered as circumstances of aggravation would include the use of a deadly weapon in the commission of any assault and battery. You might also consider the infliction of serious bodily harm or injury resulting from the battery as being a circumstance of aggravation. Serious harm or injury means more than slight. It means substantial injury. . . .

(Id. Ex. 1 (App'x 157-58), ECF No. 11-1.) The trial court's jury charge correctly provided the elements of ABHAN. See State v. Coleman, 536 S.E.2d 387, 389 (S.C. Ct. App. 2000). Therefore, the magistrate judge did not err in finding the PCR court's decision that trial counsel was not ineffective was not an unreasonable application of or contrary to existing law. As a result, Alexander's objection is without merit.

**m. Failure to Object to ABWIK Jury Instructions**

Alexander objects that the magistrate erred in finding that the PCR court's decision that trial counsel was not ineffective for failing to object to the trial court's jury instructions regarding the elements of ABWIK was not an unreasonable application of or contrary to existing law.  (Objs. 16-22, ECF No. 54.)  Alexander argues that the trial court's instructions were improper on several grounds:  (1) the trial court improperly charged the jury on inferred malice; and (2) the trial court improperly instructed the jury on "general intent to kill."[12] (Id. at 16-22, ECF No. 54.)  Alexander argues that "the trial court failed to instruct the Jurors on the legal circumstances, criteria[] or requirements which constitute a general intent to kill. . . ." (Id. at 18-19, ECF No. 54.)  Further, Alexander argues that a general intent to kill jury charge would have been inappropriate because there was no basis for the charge.  (Id. at 19, ECF No. 54.)  As a result, Alexander argues that the jury was allowed to decide the law of general intent, rather than apply the facts to determine whether general intent to kill was proven. (Id. at 18-19, ECF No. 54.)

Alexander also argues that the trial court erred by charging the jury that they could infer malice from the use of a deadly weapon.  (Objs. 19-20, ECF No. 54.)  Alexander argues that inferred malice instructions are unconstitutional and, therefore, trial counsel's failure to object was ineffective assistance.  (Id. at 19-22, ECF No. 54 (citing State v. Belcher, 685 S.E.2d 802, 809 (S.C. 2009)).)

---

[12] To the extent that Alexander argues the general intent to kill instruction is an error in the indictment, the court has previously addressed this objection.

In regard to the jury charge, the PCR court found that "[a]fter reviewing the record, this Court finds that the jury charge given by the trial judge was proper and well-within the law at the time of Applicant's trial, so there is no deficient performance for Counsel's failure to object." (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 467), ECF No. 11-1.)  Furthermore, the PCR court's decision is supported by the record.  During Alexander's trial, the trial court explained the elements of malice aforethought, including inferred malice.  (Id. Ex. 1 (App'x 153-56), ECF No. 11-1.)  Additionally, the trial court gave a brief explanation of criminal intent and general intent to kill.  (Id. Ex. 1 (App'x 156-57), ECF No. 11-1.)

At the time of Alexander's trial, the trial court's jury instructions were proper.  Under South Carolina law, "malice aforethought" satisfies the "general intent" requirement of ABWIK.  See State v. Kinard, 646 S.E.2d 168, 169 (S.C. Ct. App. 2007).  Therefore, the trial court's charge on malice aforethought satisfied the court's requirement to explain what was required to prove a general intent to kill.

Similarly, the trial court's instruction that the jury could infer malice from the use of a deadly weapon was proper at the time of Alexander's trial.  In Belcher, the South Carolina Supreme Court, "in a clear break from . . . modern precedent," held that a jury charge which allows a jury to infer malice from the use of a deadly weapon was improper.  685 S.E.2d at 809. However, the South Carolina Supreme Court held that its ruling was limited to "all cases which are pending on direct review or not yet final where the issue is preserved."  Id. at 810.  In the instant case, the inferred malice issue was not preserved because Alexander's trial was held two years before Belcher was decided and trial counsel did not object to the instruction.  (Mem. Supp. Mot. Summ. J. Ex. 1 (App'x 415), ECF No. 11-1.)  Therefore, the magistrate judge did

not err in finding that the PCR court's decision was not contrary to or an unreasonable application of existing law.  As a result, Alexander's objection is without merit.

After a thorough review of the Report and Recommendation and the record in this case, the court adopts Magistrate Judge McDonald's Report and Recommendation and incorporates it herein.  Based on the foregoing, the court grants Respondent's motion for summary judgment and dismisses Alexander's habeas petition with prejudice.

It is therefore

**ORDERED** that Respondent's motion for summary judgment, docket number 12, is granted and Alexander's habeas petition is dismissed with prejudice without an evidentiary hearing.  It is further

**ORDERED** that Petitioner's motion for default judgment, docket number 15, is denied. It is further

**ORDERED** that Petitioner's motion for a certificate of appealability, docket number 58, is denied because Petitioner has failed to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**


s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
February 28, 2017

**NOTICE OF RIGHT TO APPEAL**

The Petitioner is hereby notified that he has the right to appeal this order within thirty

(30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate

Procedure.